UNITED STATES of America,
Plaintiff,

v.

Edward R. LESLIE, Defendant.

Crim. A. No. 76–7.

United States District Court,
D. Delaware.

April 1, 1976.

John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Richard Allen Paul and Paul M. Lukoff of Paul & Lukoff, Wilmington, Del., for defendant.

OPINION

WALTER K. STAPLETON, District Judge:

Section 843(b) of Title 21 of the United States Code provides:

It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of [Title 21, respecting Drug Abuse Prevention and Control]. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

Defendant Leslie stands charged with nine separate violations of Section 843(b). The counts differ among themselves only with respect to dates and times, and each charges in essence that the defendant participated in a telephone conversation between Wilmington, Delaware, and Toronto, Ontario, Canada, in order to facilitate a distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

The defendant has moved to dismiss the information and in the course of the briefing and argument on this motion, it has been conceded by the United States that the evidence it will produce at trial will tend to show the following, and no more than the following:

1. Defendant is a Canadian national.

2. With respect to all of the telephone calls, defendant was on the Canadian end of the line.

3. The other party to the telephone calls was a government informant.

4. The single distribution of methamphetamine allegedly contemplated in the conversations between defendant and the informant was to have occurred in Pittsburgh, Pennsylvania, but, in fact, never took place.

5. Neither the defendant, nor any agent of his, nor any methamphetamine originating from the defendant,

came into the United States as a result of the telephone conversations.[1]

Upon this stipulation of what the trial evidence will show, there are three questions before the Court for decision:

1. In order to obtain a conviction under 21 U.S.C. § 843(b) where the felony allegedly facilitated was distribution of drugs, must the government prove an actual distribution of the drugs?

2. Did Congress, when it enacted 21 U.S.C. § 843(b), intend to reach international phone calls concerned with contemplated drug distributions within the United States?

3. If the answer to question 2 is yes, did Congress have the power under international law to so legislate in a case where the defendant is a foreign national, never enters the United States, and where no acts, much less any distribution of drugs, occur in the United States?

I believe that the first question should be answered in the affirmative, thus rendering 21 U.S.C. § 843(b) unavailable to the government in the present case. Because of that disposition, I decline to reach the second and third questions.

Prior to the 1970 enactment of the narcotics laws in their present form, the "use of communications facilities" statute (18 U.S.C. § 1403) read as follows:

> Whoever uses any communication facility in committing or in causing or facilitating the commission of, or in attempting to commit, any act or acts constituting an offense or a conspiracy to commit an offense the penalty for which is provided in—
>
> [various statutory sections specified, including principal provision of narcotics law]

shall be imprisoned not less than two and not more than five years, and, in addition, may be fined not more than $5,000. Each separate use of a communication facility shall be a separate offense under this section.

This statute made it a federal crime to use a communications facility:

1. "in committing" any acts constituting one of the specified narcotics offenses,

2. "in causing or facilitating the commission of" any such acts,

3. "in attempting to commit" any such acts, or

4. in "a conspiracy to commit" any such acts.

The statute, as does its present-day counterpart, further provided that each separate use would constitute a separate offense.

Given the language and structure of this statute, the most natural construction of the phrase "in causing or facilitating the commission of" a narcotics offense is one which brings within its scope any communications activity resulting in or assisting in the commission of a narcotics offense.[2] The phrase thus refers to something more than an unsuccessful effort to commit an offense, which would rather be encompassed by the third or fourth clauses.

As is apparent from a comparison of the text of old Section 1403 with the 1970 revision now contained in 21 U.S.C. § 843(b) and quoted at the commencement of this Opinion, the draftsman of the revision in most respects closely tracked the language of the existing statutory provision. The first two clauses were left intact; the third and fourth clauses, relating to criminal conduct short of a consummation of the substantive offense, however, were excised. The reasonable inference to be drawn is

---

1. Defendant Leslie was arrested in California after his indictment while attending a trade show.

2. The term "facilitate" is most frequently used to impose responsibility for a committed crime on one whose activities have made its commission easier or less difficult but who is not necessarily the actual perpetrator of the crime. See e. g. ALI Model Penal Code § 204(3); 11 Del.C. § 271(2).

that Congress intended to deprive the government of the use of Section 843(b) in cases of this kind. While one might be reluctant to draw this inference if the result were to relieve of all criminal responsibility those who use communications facilities in attempts and conspiracies to violate the narcotics laws, Congress, at the same time it deleted the third and fourth clauses of the old statute, also inserted a new statutory section dealing solely with attempts and conspiracies to violate the narcotics laws. 21 U.S.C. § 846, adopted in 1970, provides:

> Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Given the adoption of this Section along with the excisions from old Section 1403, I think it fair to infer that Congress intended the use of a telephone or telegraph in an attempt or conspiracy to commit a narcotics violation to be treated as all other attempts or conspiracies to commit such a violation.

Analysis of the effect of moving cases of this kind from the ambit of the communication facility section to that of the new Section 846 lends support, I believe, to this conclusion. That effect is to substantially ameliorate the potential penalty for individuals who make a number of telephone calls but never succeed in accomplishing the primary societal evil against which the narcotics laws are aimed. Given the "separate offense" provisions of Section 843(b), a person who makes nine calls in an unsuccessful effort to distribute methamphetamine, as defendant Leslie is alleged to have done, would be exposed, under the government's construction of that statute, to a term of imprisonment of thirty-nine years. See 21 U.S.C. § 843(c). If his conduct is only proscribed by Section 846, however, the maximum exposure of a defendant in this position is the same as that of one who has consummated a distribution—five years.

It is true that Congress might have seen fit, in an effort to discourage use of communications facilities for drug-related purposes, to treat in the same fashion persons using communications facilities in unsuccessful efforts to distribute drugs and those successfully utilizing the same facilities. I find the above-described ameliorating effect to be confirmative of the more natural interpretation of the textual development of the statute, however, for two reasons. First, I can find no other rational purpose for the obviously intentional deletion of clauses 3 and 4 of old Section 1403. Second, the ameliorating effect of the construction I adopt is consistent with the fact that one of Congress' primary concerns in adopting the 1970 revision was to revise the scheme of penalties provided in the code for narcotics offenses.[3]

Only one further comment is in order. The government argues that, while the indictment charges defendant Leslie with a violation of Section 843(b), its proffered evidence would be sufficient to warrant a jury in finding that defendant Leslie was guilty of the "lesser included offense" of facilitating an attempted distribution of methamphetamine. This theory is fatally inconsistent, however, with the Court's conclusion that one cannot violate Section 843(b) by facilitating a nonexistent distribution. Section 846, not Section 843(b), is directed to inchoate offenses.[4] In so holding, I express no

---

3. One of the Congressional purposes in enacting the new drug laws was to provide "for an overall balanced scheme of criminal penalties for offenses involving drugs", House Rep..No. 91–1444, 1970 U.S.Code Cong. & Admin.News, p. 4567.

4. This is not to say that one could not conceivably be convicted of attempting unsuccessfully to facilitate a distribution actually consummated by another. But these are not the facts of this case.

opinion on whether defendant Leslie could be indicted for attempting to distribute methamphetamine.[5]

This case will be dismissed.[6]

---

**5.** Given the facts of this case, such an indictment would raise altogether different questions. See e. g., 1 *Wharton, Criminal Law* §§ 74, 75.

**6.** The Court recognizes that this action is procedurally unusual since the Court has not held

the indictment to be fatally defective on its face. The parties, however, in a commendable effort to expedite these proceedings and save jury time, have agreed to a pre-trial determination based upon the government's proffered evidence.