**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jaime GOMEZ–TOSTADO,
Defendant-Appellant.**

No. 78–2318.

United States Court of Appeals,
Ninth Circuit.

April 16, 1979.

Rehearing Denied June 4, 1979.

Richard M. Grossberg, San Diego, Cal., for defendant-appellant.

Peter Nunez, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Peter K. Nunez, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before HUFSTEDLER and WALLACE, Circuit Judges, and LUCAS,* District Judge.

WALLACE, Circuit Judge:

Gomez-Tostado appeals from his conviction for possession, with the intent to distribute, a controlled substance (heroin) in violation of 21 U.S.C. § 841(a)(1).[1] He raises two arguments which merit discussion: that this statute does not make criminal the possession of heroin if he intends to distribute it in a foreign country and, secondly, that transshipment of the contraband is

---

* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

1. 21 U.S.C. § 841(a)(1) states: "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . ."

governed by 21 U.S.C. § 954 rather than by section 841(a)(1). We affirm.

In an effort to stop the flow of narcotics in Mexico, Mexican officials established roadblocks to stop vehicles and perform searches for narcotics and other contraband. Mexican officials advised agents of the Drug Enforcement Administration of the United States Department of Justice (DEA) that, in order to avoid these roadblocks, narcotics violators transported contraband from the interior of Mexico across the border in Texas to the San Diego area to Tijuana, B.C., Mexico. Information from a confidential source indicated that Gomez-Tostado had, in the past, transported a quantity of heroin by this route. The informant also stated that Gomez-Tostado had recently left Tijuana, crossed the border into the United States at San Ysidro, California, and was headed into the interior of Mexico via El Paso, Texas to bring another shipment of heroin to Tijuana. Agents confirmed that Gomez-Tostado's car had indeed crossed the border at San Ysidro on February 20, 1978. On February 22, 1978, DEA agents discovered the suspect car heading west at Yuma, Arizona, and began following it. The agents finally stopped the car in San Diego, heading south, in the direction of Tijuana. Pursuant to a search warrant acquired by a DEA agent just prior to the interception, the car was taken to the DEA office in National City, approximately three miles from the place where it had been stopped. The car was then searched and, secreted inside the body of the car adjacent to the taillight assemblies, the agents found packages containing approximately five kilograms of 40 percent pure heroin. This evidence resulted in Gomez-Tostado's conviction.

## I

■ Gomez-Tostado first argues that section 841(a)(1) does not proscribe possession of a controlled substance with intent to distribute, where the defendant intends to distribute the substance in a foreign country (in this case, Mexico). Section 841(a)(1) states in part: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to . . . possess with intent to . . . distribute, . . . a controlled substance . . . ." The statute simply does not address the question of where distribution is to take place. Indeed, on its face, the statute does not differentiate between ultimate destinations at all.

While we will strictly construe criminal statutes, *United States v. Dunlap*, 573 F.2d 1092, 1094 (9th Cir. 1978) (per curiam), this rule "only [applies] 'when we are uncertain about the statute's meaning.'" *United States v. Culbert*, 435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349 (1978). It has thus been held that when criminal statutes "are unambiguous, they should be interpreted according to their plain language," *United States v. Truelove*, 527 F.2d 980, 983 (4th Cir. 1975). We think the statute is unambiguous. The Supreme Court has, however, indicated that, despite clear language, courts would not be unwise to consider legislative history when it would aid in "'construction of the meaning of words, as used in the statute.'" *See United States v. Culbert, supra*, 435 U.S. at 374 n.4, 98 S.Ct. at 1114 n.4.

Despite Gomez-Tostado's assertion to the contrary, we find nothing in the legislative history or language of section 841(a)(1) that suggests any congressional intent to limit the applicability of the statute to defendants whose intended distribution point is in this country. Section 841 is contained in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (Act). While Title III "pertains primarily to the regulation of importation and exportation of the substances controlled under the provisions of Title II," H.R.Rep.No.91–1444, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 4566, 4638, in the text of Title II Congress observed that "[a] major portion of the traffic in controlled substances flows through interstate and foreign commerce," 21 U.S.C. § 801(3), and also expressly declared its obligations under a variety of "international conventions designed to establish effec-

tive control over international and domestic traffic in controlled substances," *id.* § 801(7). That Title III is directly concerned with international drug traffic does not by any means limit the applicability of Title II to activities that are wholly domestic in nature. These legislative statements shed no light on the question before us. Instead, we conclude that "Congress has conveyed its purpose clearly, and we decline to manufacture ambiguity [in the statute] where none exists." *United States v. Culbert, supra,* 435 U.S. at 379, 98 S.Ct. at 1117.

Gomez-Tostado contends that the government is attempting to use section 841(a)(1) to punish him for violating Mexico's narcotics laws. This is not true. He was found in possession of a controlled substance in the United States. More specifically, he was found to have possessed this substance with an intent to distribute it. Of course, it is American law, section 841(a)(1), which prohibits such possession.

■ Gomez-Tostado argues that he formed his intent to distribute the heroin in Mexico. But the location where the defendant first forms his intent does not matter, so long as the intent coincides at some point with possession in the United States. There is no question but that Gomez-Tostado had both possession of and intent to distribute heroin at the time he was arrested.

Gomez-Tostado also argues that because there was no distribution, there was no possession with intent to distribute. In this respect, Gomez-Tostado relies upon *United States v. Leslie,* 411 F.Supp. 215, 216 (D.Del.1976). His effort is fruitless for two reasons. First, the Third Circuit has rejected the reasoning of that case. *United States v. Pierorazio,* 578 F.2d 48, 49–51 (3d

Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978). Second, even were we to accept *Leslie's* approach, despite its rejection by the Court of Appeals in its own circuit, the case is simply inapposite. *Leslie* concerned 21 U.S.C. § 843(b) and held only that a defendant could not be convicted for facilitating distribution of a controlled substance under that section when no distribution in fact took place. The statute before us clearly does not require that the defendant actually distribute or facilitate the distribution of the controlled substance before he may be subjected to criminal liability for possession with intent to distribute.

## II

■ This brings us to Gomez-Tostado's argument that since a specific provision of the Act regulates transshipment of controlled substances through the United States, *see* 21 U.S.C. § 954,[2] he may not be convicted pursuant to section 841(a)(1) under the circumstances of his case. We do not agree.

While Gomez-Tostado has pointed out the existence of section 954, he has chosen to ignore sections that regulate and, in fact, prohibit most importation (section 952) and exportation (section 953) of controlled substances. Section 954 only *"provides an exception* to the rules of [sections 952 and 953] . . . for *certain* transshipments and in-transit shipments of controlled substances." H.R.Rep.No.91–1444, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 4566, 4643 (emphasis added). Specifically, section 954 allows importation for transshipment to another country of controlled substances in schedule

---

**2.** 21 U.S.C. § 954 states in part:

Notwithstanding sections 952, 953, and 957 of this title—

  (1) A controlled substance in schedule I may—

    (A) be imported into the United States for transshipment to another country, or

    (B) be transferred or transshipped from one vessel, vehicle, or aircraft to another vessel, vehicle, or aircraft within the United States for immediate exportation,

if and only if it is so imported, transferred, or transshipped (i) for scientific, medical, or other legitimate purposes in the country of destination, and (ii) with the prior written approval of the Attorney General . . . . .

    (2) A controlled substance in schedule II, III, or IV may be so imported, transferred, or transshipped if and only if advance notice is given to the Attorney General in accordance with regulations of the Attorney General.

I (including heroin) "[n]otwithstanding sections 952, 953, and 957 . . . *if and only if* it is so imported, transferred, or transshipped (i) for scientific, medical, or other legitimate purposes in the country of destination, and (ii) with the prior written approval of the Attorney General . . ." 21 U.S.C. § 954 (emphasis added).

The penalties provided for violations of section 954 are less severe than those provided for sections 841(a)(1), 952, and 953, at least insofar as schedule I substances, such as heroin, are concerned. *Compare* 21 U.S.C. § 961 *with* 21 U.S.C. §§ 841(b)(1), 960(b)(1). We need not decide here whether Congress intended that the lesser penalties prescribed for violations of section 954 were ever to be imposed in lieu of the more severe penalties for violations of sections 841(a)(1), 952, or 953, although section 954 and one or more of these other sections have been violated. In our view, Congress did not intend, at least in circumstances such as those here where the purposes behind the transshipment were not legitimate, to preclude the imposition of the more severe penalties. Therefore, at least when the purposes for the transshipment are not legitimate, we believe that sections 952 and 953, as well as section 841, apply.

■ Even if section 954 is also thus violated, "[i]t is the general rule that, where an act violates more than one statute, the Government may elect to prosecute under either unless the congressional history indicates that Congress intended to disallow the use of the more general statute." *United States v. Castillo-Felix,* 539 F.2d 9, 14 (9th Cir. 1976). As we have already concluded, the legislative history of section 954 indicates that Congress intended it to serve as an exception, only under limited circumstances, to the more general proscriptions against importation and exportation contained in sections 952 and 953. *Cf. Kniess v. United States,* 413 F.2d 752, 759 (9th Cir. 1969) (tracing the history of several congressional enactments indicated intent that narrow statute precluded application of more general statute with respect to particular criminal activity at issue in that case).

When the circumstances of a particular defendant do not fall within the narrow protection of section 954, at least insofar as the purposes for transshipment are not legitimate, he may be prosecuted pursuant to section 841(a)(1), whether or not any one or all of sections 952, 953, and 954, may also be applicable.

AFFIRMED.