UNITED STATES of America, Plaintiff,

v.

Gary BARNETT, Defendant.

CR. F–80–125–EDP.

United States District Court,
E. D. California.

Feb. 4, 1981.

William B. Shubb, U. S. Atty., Sacramento, Cal., Brian C. Leighton, Asst. U. S. Atty., Fresno, Cal., for plaintiff.

Donald R. Schechter, Forest Hills, N. Y., for defendant.

## MEMORANDUM DECISION ON MOTION TO DISMISS, TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT, and PRELIMINARY RULING RE. ADMISSIBILITY OF EVIDENCE.

PRICE, District Judge.

### FACTUAL BACKGROUND

The following was gleaned from oral and written arguments of counsel:

Pursuant to a Federal Search Warrant, on June 1, 1980, a search was made of the premises at 2113 Potter, Modesto, California, this being the residence of one Donald Eugene Hensley. Seized from Hensley's residence were, among other things, 20 chemical exhibits, 104 items of glassware and apparatus, notes, ledgers, formulas, Postal Money Order receipts, brochures relating to methods for the production of controlled substances, instructions for the manufacturing of PCP and other controlled substances, copies of a chemistry text, chemical supply house catalog, purchase order forms, and other documents relating to drug manufacture. In the course of the aforesaid search and seizure, Donald Eugene Hensley was arrested for violation of federal narcotics laws.[1] Subsequent to being fully advised of his rights, Hensley freely admitted that he was attempting to manufacture PCP; that he was using a formula that he had purchased from United News Service, P.O. Box 333, Bay Station, Brooklyn, New York. Hensley further stated

---

1. Hensley plead guilty to one count of a multi-count indictment and after a 90-day psychiatric observation, was placed on five years probation (Cr. F 80–103–EDP, Eastern District of California, Fresno). The government has represented that Hensley has cooperated fully with the DEA in preparing this case.

that he first became aware of the United News Service through an advertisement published in *High Times* magazine. In responding to that advertisement, he received from the United News Service a catalog of available drug manufacture instructions. He then forwarded $10.00 via Postal Money Order to United News Service for instructions pertaining to the manufacture of PCP as well as the name and address of Merrill Scientific as a reliable supply house to obtain chemicals. He further stated that he followed the advice of the United News Service and ordered from Merrill Scientific those chemicals used in his illicit laboratory.

Based on this information, the United States Drug Enforcement agents applied for and received a search warrant to search the premises occupied by the defendant at 2313 East 24th Street, Brooklyn, New York. This search warrant was executed on August 21, 1980, and is the subject of the defendant's Motion to Suppress the evidence seized in that search.

Subsequent to the arrest of Hensley on June 1, 1980, an agent of the United States Drug Enforcement Administration, using an assumed name, also responded to the advertisement of United News Service in *High Times* and obtained material similar to that received by Hensley.

On August 27, 1980, the United States Grand Jury for the Eastern District of California returned a three count indictment against the defendant, as follows:

1. Aiding and abetting Hensley in the attempted manufacture of phencyclidine (PCP), a violation of 21 U.S.C. §§ 846 and 841(a)(1), and 18 U.S.C. § 2.

2. The use of the United States mail to facilitate the commission of a felony by Hensley, a violation of 21 U.S.C. §§ 846 and 841(a)(1), and 21 U.S.C. § 843(b).

3. A third count was based on defendant's response to the order placed with him by the government drug enforcement agent. The United States Attorney moved to dismiss the third count at the time of oral argument on defendant's Motion to Dismiss. The government's motion for dismissal was based upon the fact that since the drug enforcement agent did not attempt to manufacture the drug in question, no crime was committed. The government's motion to dismiss was granted, so we are only concerned with counts one and two.

## DEFENDANT'S MOTION TO DISMISS

The defendant based much of his written and oral argument in support of his motion to dismiss upon constitutional grounds. However, this underpinning was cut from under him by the government's concession that the defendant's act of advertising the various materials in the *High Times* magazine is and was a constitutionally protected activity. The government argues that the crime occurs only when a customer solicited by the ad actually attempts to manufacture the drug from the formulae furnished by the defendant. This being the case, the government argues, it rests with the trier of fact to determine whether the defendant possessed the requisite criminal intent in placing the advertisement, and therefore, the court cannot grant the defendant's Motion to Dismiss as a matter of law.

## THE AUTHORITY OF THE DISTRICT COURT IN DECIDING A MOTION TO DISMISS UNDER FED.R.CRIM.P. 12(b)

From the court's research, it would indicate that this case would fall within the proscription contained in *United States v. King, et al.*, 581 F.2d 800 (10th Cir. 1978).

In *King*, as here, defendants urged that their motion to dismiss should be granted because their conduct did not constitute a violation of the statutes under which they were charged. The district court granted the motion, and the court of appeals reversed, stating, at page 802:

"Although the district judge did not articulate his reasons for granting the motion, the inescapable conclusion from examination of the record is that he did so upon the basis that appellees' conduct did not constitute a violation of the statute charged. No other ground was as-

serted on the motion or in argument, and no other ground was inquired into by the district judge.

"Rule 12(b), Fed.R.Crim.P., provides in part, 'Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion.' The matter raised by appellees' motion was not 'capable of determination without the trial of the general issue.' It was the general issue. Until the matter is put to trial before the trier of fact, the district court has no jurisdiction to decide a defendant's innocence or guilt. The Supreme Court so held in *Serfass v. United States*, [420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265] *supra*:

'Under our cases jeopardy had not yet attached when the District Court granted petitioner's motion to dismiss the indictment. Petitioner was not then nor has he ever been, "put to trial before the trier of facts." The proceedings were initiated by his motion to dismiss the indictment. ... *In such circumstances, the District Court was without power to make any determination regarding petitioner's guilt or innocence.*'[2]

"Certainly an information or indictment may be dismissed if it is insufficient to charge an offense. But it may not be properly challenged by a pretrial motion on the ground that it is not supported by adequate evidence."

It should be indicated that the government has made substantial concessions during oral argument, specifically:

1. Defendant's act of advertising his catalogs and drug formulae is a legal and constitutionally protected activity.

2. The government has no evidence that there ever was any contact between the defendant and Hensley, other than the correspondence which resulted from the defendant filling Hensley's order for catalog, the chemical formula and other information.

3. That the government has no evidence that the defendant knew Hensley was going to attempt to formulate the drug.

4. That the government will ask the jury to draw an inference of "guilty knowledge" from the nature of the advertising, the nature of the publication in which the advertising took place; further, from the fact that the defendant did not advertise his wares in "certain recognized scientific magazines" such as *Scientific American*.[3]

■ Just as a district court cannot receive evidence in support of a Rule 12(b) motion to dismiss (*see United States v. Mann*, 517 F.2d 259 (5th Cir. 1975), *cert. denied* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97), neither can the court rely on factual statements as to the probable evidence to be introduced at trial from the lips of counsel. *See United States v. King, supra*, at 802:

"Appellees in the present case made no contention that the information did not charge an offense against the United States. Although the district judge did not receive evidence, he dismissed the information on the basis that appellees' conduct, as explained by counsel, did not constitute the violation charged. The dismissal was in effect a determination of guilt made at a point in the proceedings when the district judge was without jurisdiction to render it."

However, there are other points which must be addressed even if they might be viewed as the court's gratuitous statement of opinion.

The offense of aiding and abetting is of ancient origin and has evoked much discussion, not only within this circuit, but throughout the circuits of the United States. Since the critical problem facing the government in the successful prosecution of this case is the requisite state of mind of the defendant at the time he supplied Hensley with the requested material,

---

2. 420 U.S. at 389, 95 S.Ct. at 1063.

3. See Preliminary Rulings Re. Admissibility of Evidence, *supra*.

the United States Attorney might well consider the following:

"The *mens rea* of aiding and abetting is 'guilty knowledge'. *Grant v. United States*, 291 F.2d 746, 749 (9th Cir. 1961). Barbara, in order to be found guilty, must at least have assisted Ulysses in the transportation of the firearms knowing that he was transporting firearms. We said recently that one acting with 'criminal intent and design to assist the perpetrators' is guilty of aiding and abetting. *United States v. Lane*, 514 F.2d 22, 27 (9th Cir. 1975). A defendant to be an aider and abettor *must know that the activity condemned by the law is actually occurring and must intend to help the perpetrator.* R. Perkins, Criminal Law 645 (1969)." (emphasis added)

*United States v. McDaniel*, 545 U.S. 642 (9th Cir. 1976).

Likewise, the United States Attorney might well consider admonitions contained in *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919:

"In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it

as in something that he wishes to bring about, that he seek by his action to make it a success.' L. Hand, J., in *United States v. Peoni* (C.C.A.2d N.Y.) 100 F.2d 401, 402."

■ Taken together, then, to prove a defendant guilty of aiding and abetting, the government must prove that the person allegedly aiding and abetting the transaction must intend that an activity succeed which the accused knows is of a criminal nature.[4]

In conclusion, the defendant's Motion to Dismiss Count I is overruled because any other ruling would require the court to weigh evidence of the defendant's guilt or innocence.

### DEFENDANT'S MOTION TO DISMISS COUNT II OF THE INDICTMENT.

■ The defendant's contention that 21 U.S.C. § 843(b) is not applicable to inchoate offenses, such as aiding and abetting necessitates a legal rather than a factual determination.

The Ninth Circuit has considered this contention on several occasions, and has rejected similar contentions made by defendants in each of these cases.

4. A series of California cases have dealt with the distinction between "aiding" and "abetting". An excellent summary is found in *People v. Etie*, 119 Cal.App.2d 23; 258 P.2d 1069 (1953), at page 28, 258 P.2d 1069:

"The word 'aid' means 'to assist, "to supplement the efforts of another." ' (*People v. Bond*, 13 Cal.App. 175, 185 [109 P. 150].) 'The word "aid" does not imply guilty knowledge or felonious intent, whereas the definition of the word "abet" includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime.' (*People v. Dole*, 122 Cal. 486, 492 [55 P. 581, 68 Am.St.Rep. 50].) 'To "abet" another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting or aiding the commission of such criminal offense.' (*People v. Best*, 43 Cal.App.2d 100, 105 [110 P.2d 504].) An aider and abettor is 'guilty only to the extent (1) of his knowledge, or (2) of the natural and reasonable consequences of the acts which he aided or encouraged.' (*People v. Beltran*, 94 Cal.App.2d 197, 205–206 [210 P.2d 238].)"
And in Wharton's *Criminal Law*, Vol. 1, 14th Ed, § 29, at page 158, the rule is stated as follows:

"Moreover, a person may 'aid' another in committing a crime without realizing that he is helping in the commission of a crime,[6] while an "abettor" by definition knows that a crime is about to be committed."

The defendant is here charged under 18 U.S.C. § 2, which, in its entirety reads as follows:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

And finally, the author of Wharton's *Criminal Law, supra*, observes:

"Since the terms 'aid and abet' are often used in the conjunctive, and since additional language such as encourage, counsel and command usually accompanies 'aid' or 'abet', as the case may be, the difference in meaning of the terms does not present a significant problem." [citing *People v. Smith*, 204 Cal. App.2d 797, 23 Cal.Rptr. 5 (1962)].

The leading Ninth Circuit cases are *United States v. Rodriguez*, 546 F.2d 302 (9th Cir. 1973); *United States v. Thomas*, 586 F.2d 123 (9th Cir. 1978); and *United States v. Martin*, 599 F.2d 880 (9th Cir. 1979).[5]

Inasmuch as the defendant has cited and relied upon *United States v. Leslie*, 411 F.Supp. 215 (D.Del.1976), it is important to note the interpretation placed upon that case by the Ninth Circuit panel in *United States v. Thomas, supra.* It is there pointed out, *Leslie* was dismissed because the underlying felony was not proven.

In a word, unless the government can prove the underlying felony charge in Count I, a separate independent conviction of Count II cannot stand.

Defendant's Motion to Dismiss Count II of the indictment is likewise overruled because 21 U.S.C. § 843(b) is applicable to inchoate offenses such as conspiracy or aiding and abetting. A finding of guilt by the jury of Count I would substantiate a finding of guilt under Count II of the indictment.

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED UNDER THE SEARCH WARRANT.

■ Defendant mounts a broadside attack against the admission of certain evidence seized pursuant to a search warrant obtained by a Drug Enforcement Administration (DEA) agent shortly after the Hensley arrest. The search warrant was issued pursuant to a six-page affidavit signed by Agent Sherrington which is replete with the details of the Hensley case, the information obtained from Hensley, the documents received by Agent Sherrington which originally formed the basis for the now dismissed Count III, and the information garnered by a surveillance team which was posted in the vicinity of defendant Barnett's residence.[6]

Accordingly, Agent Sherrington alleged that he had probable cause to believe that the described premises, i. e., Barnett's apartment, contained "instructions for preparation or manufacture of methaqualone, methamphetamine, phencyclidine, diethyltrayptamine, lysergic acid, amphetamine and cocaine; catalogs of controlled substance preparation or manufacture instructions; mailing lists for drug related correspondence; business correspondence received by United News Service and addressed from United News Service and others; and documents reflecting locations to purchase chemicals and surreptitious means of purchasing chemicals."

At no point in his extensive affidavit does Agent Sherrington state any basis for his belief that the articles sought are some way connected with any criminal activity. Indeed, a careful reading of the affidavit reveals that the only criminal activity which is mentioned or alluded to is that of Hensley.

The Magistrate to whom application was made issued a search warrant describing the property to be seized in precisely the foregoing words used by Agent Sherrington in his affidavit, including the customary phrase: "all of which is property that constitutes evidence of the commission of a violation of Title 21, United States Code, Section 843(b) and § 841(a)(1) and § 846 and 18 USC § 2."[7]

The government's response to defendant's attack is scarcely less precise that the defendant's scattergun onslaught. Nowhere in the briefs of the government or during oral argument did either party approach the crux of the matter, i. e., in view of the government's concession, and particularly

---

**5.** Although appellant's conviction was reversed in *United States v. Martin, supra*, the reversal occurred because the government did not prove the underlying conspiracy upon which the communications count was based.

**6.** It appeared from counsel's argument that Barnett's residence also housed his business operation.

**7.** All section citations other than 18 U.S.C. § 843(b) appear to be written on the face of the search warrant by the magistrate issuing the search warrant.

the government's voluntary dismissal of Count III of the indictment, how can it be said that any of the seized articles were either contraband, evidence of criminal activity, or connected with criminal activity?

As previously pointed out, the government concedes that the defendant's act of advertising his catalogs and formulae is a legal and constitutionally protected activity.

Further, and inferentially, with the dismissal of Count III, the government has conceded that the crime, if any, which was allegedly committed by Barnett occurs only when one of his customers actually engages in the manufacture of the controlled or illegal substance. It seems to follow, therefore, that the mere transmission of the formulae and instructions as to where to obtain the materials to formulate the illegal drugs is a legal activity.

If the act of formulating the illegal and controlled substances is the act which turns the defendant's otherwise legal conduct into criminal conduct, would not the only material that could be validly seized be evidence of the defendant's active participation in encouraging and/or soliciting Hensley to convert chemical theory into reality? Significantly, neither the affidavit for the search warrant nor the search warrant specifies what material of this type and content should be seized. Neither does the affidavit for the search warrant indicate that Hensley orally stated that he was specifically encouraged or especially counselled by Barnett to attempt to formulate the PCP, the substance which he was in the process of formulating at the time of his arrest. Neither does the affidavit contain any allegation that the specific materials sought to be seized by the search warrant possess any nexus to general or specific criminal activity.[8]

The only case which the court can find which addressed the responsibility of the Magistrate in determining whether or not there is probable cause to connect the property desired to be seized with the criminal activity is *United States v. McSurely,* 154 U.S.App.D.C. 141, 473 F.2d 1178 (D.C.Cir. 1972). There the court was dealing with a state search warrant and with an affidavit which merely stated that the informant was suspicious and believed that "seditious" matter was being kept on the premises of the defendant. While the court there held the search warrant invalid on multiple grounds, 154 U.S.App.D.C. 141, 473 F.2d at page 1186 of the lengthy decision, the court discussed the obvious inability of the Magistrate to gauge whether or not there was probable cause to believe that the documents sought by the search warrant were, in fact, seditious, relying on the teachings of *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).[9]

It should be noted that the affidavit in *Ventresca, supra,* was not only detailed, but there were specific allegations which supplied the necessary nexus between the activity observed by the Alcohol, Tobacco and Firearms investigator and the criminal act which was suspected by the investigators and was being investigated.

Finally, it should be noted that the indictment in this matter was returned on August 26 or 27, 1980, whereas, the search warrant was issued on August 21, 1980, and the return dated the same date at approximately 2:10 p. m.

---

**8.** It should be noted, at this point, that all of the material received by Hensley was voluntarily turned over to DEA agents by Hensley. The only items possibly missing were copies of correspondence with defendant's company that originated from Hensley. The search warrant, rather than focusing on this correspondence, contains the following dragnet description: "business correspondence received by United States News and addressed to United States News and others"—clearly a "general" rather than a "specific" designation.

**9.** The paucity of decisions on this point is understandable. In the normal situation, the nexus between the property sought and the crime is clear. The problem in this area first began to appear in obscenity cases where adversary hearings were held so that the Magistrate might make a preliminary ruling as to whether probable cause existed as to the finding of obscenity. [See *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 475 (1973); *Roaden v. Kentucky,* 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757; *United States v. Jacobs,* 513 F.2d 564 (9th Cir. 1975).]

For all of the foregoing reasons, the search warrant issued on August 21, 1980, by John L. Caden, United States Magistrate, is found to be invalid, and all property, papers, and documents seized pursuant to said warrant are ordered suppressed and the government is specifically ordered to return said documents forthwith.

It is not necessary to deal with defendant's other multiple contentions contained in his Motion to Controvert Search Warrant and Motion to Suppress.

### RULINGS ON GOVERNMENT'S NOTICE OF INTENTION TO INTRODUCE EVIDENCE.

■ In order to lay the basis for a possible interlocutory appeal, the government has made a detailed offer of proof as to evidence which it could introduce to establish the requisite criminal intent on the part of the defendant. These items so offered are as follows:

1. Multiple copies of *High Times* magazine,[10] published by Trans-High Corp., Farmingdale, New York 11735, the contents of which are copyrighted by the publisher.

In the affidavit for the search warrant mentioned above, the affiant, DEA Agent Sherrington, described the *High Times* magazine as a "drug-related periodical."

2. Defendant's advertisements in *Stone Age* magazine, *Relix* magazine, and *Harvest* magazine. *Harvest* magazine describes itself as "Canada's Up-Front Head Magazine!"

3. The wire sent to defendant by Ava Halpern, Trans-High Corp., dated January 10, 1979, rejecting an ad which defendant had submitted to *Stone Age* magazine "due to the fact that it is too blatant an add for making an illegal product."

4. All documents mailed from the defendant on behalf of United News Service which were seized from Donald Eugene Hensley.

5. All documents mailed from the defendant on behalf of United News Service to DEA Agent Sherrington.

6. Copies of catalogs sent to persons by defendant, including the various formulae to which the catalogs refer.

7. Evidence that the defendant did not advertise in what the government described as "certain recognized scientific magazines."

8. Evidence of personal correspondence between the defendant and a Mr. Richard Hall, representing the business firm known as Buckeye Scientific relating to the conduct of their respective businesses on how to advertise and how not to advertise availability of chemicals to formulate the various drug formulae being sold by the defendant, as well as advice as to how to avoid prosecution and investigation simply because such drugs are ordered or supplied.

Significantly, it should be noted that the offer was to determine the court's preliminary ruling as to the admissibility or nonadmissibility of these items of evidence *based solely on constitutional considerations, and not upon the normal grounds set forth in the Federal Rules of Evidence.*

The difficulty, if not the total futility, of this exercise is apparent from its mere statement. The Constitution was not designed as a code governing the admissibility of evidence. It impinges on the methods by which evidence may be gathered, and, hence, only indirectly governs its introduction at trial. The first amendment, to the court's knowledge, has never been declared to be so restrictive.[11]

The principal test to determine the admissibility of evidence, on the other hand, is Rule 402 of the Federal Rules of Evidence, which reads as follows:

"All relevant evidence is admissible, except as otherwise provided by the Consti-

---

10. It should be noted that Trans-High Corp. appears to be the same corporation which publishes *High Times.*

11. It must be kept in mind that the defendant is not being prosecuted for his "commercial speech" but rather for Hensley's use of the "message" and the use of the mails to communicate the "message".

tution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

Specifically, the court finds that all material submitted to the court for inspection [12] is admissible when tested by Constitutional grounds, with the one exception noted below. It should be noted, however, that certain of these items have been ordered suppressed as evidence elsewhere in this memorandum decision. Further, when offered at trial, defendant will be free to offer any *other* objection he deems applicable at that time, and the court will rule thereon consistent with the posture of the case at that time.

The court rules that "evidence that defendant did not advertise in certain recognized scientific magazines" is not admissible. If it be conceded, as the government does, that defendant's act of advertising in *High Times* magazine is a valid exercise of his constitutional rights, the court cannot, in logic, determine that the "place" where such rights are exercised may be received as evidence of criminal intent.

Does the act of advertising, or the failure to advertise in a publication formulated for a particular social, political or ethnic group, evidence a particular state of mind toward that group on the part of the advertiser, or merely a desire on the part of the advertiser to "get the biggest bang for his buck", in the parlance of the trade?

Significantly, neither counsel cited any authority that authoritatively disposes of this novel issue.

The court's own research was equally fruitless. The court believes that the government's reliance on the obscenity cases is not well founded.

In those cases, unlike the one presently before the court, the central issue was whether the act of publishing certain material was a criminal act, and stripped of its first amendment protections. Here, the government does not seek to prosecute the defendant for the *act* of publishing the advertisement, but rather because Hensley used the advertisement for illegal purposes. That distinction, the court feels, is critical. Further, the obscenity opinions themselves contain restrictive statements warning against their indiscriminate use in other types of cases.[13]

The government also cites authority in support of the proposition that solicitation of illegal activity is not protected speech. That proposition is not disputed. Defendant is not charged with solicitation of illegal activity; he is charged with aiding and abetting Hensley to manufacture PCP, and of using the mails to accomplish this end!

Except as noted, the proffered evidence listed by the government passes constitutional muster.

The matter is set for a telephonic trial confirmation conference on Monday, March 2, 1981 at 12:00 noon P.S.T. (3:00 p. m. E.S.T.). Defendant is ordered to be present in defense counsel's office for this conference. The United States Attorney will be present in the Chambers of the undersigned. The court will place the call to initiate the conference.

Jury trial is set for Tuesday, March 24, 1981, at 10:00 a.m., P.S.T.

All allowable time under the Speedy Trial Act (18 U.S.C. 3161) is ordered excluded

---

**12.** As of the date of the issuance of this memorandum decision, the court has not been furnished with:

    1. An unspecified later edition of *Stone Age* magazine, in which defendant advertised.

    2. A copy of *Harvest* magazine in which the defendant advertised.

**13.** See discussion in *Hamling v. United States*, 418 U.S. 87 at 130, 94 S.Ct. 2887 at 2914, 41 L.Ed.2d 590 at 628:

"The District Court's instruction was clearly consistent with our decision in *Ginzburg v. United States*, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), which held that evidence of pandering could be relevant in determination of the obscenity of the materials at issue, as long as the proper constitutional definition of obscenity is applied."

Also to the same effect, see *Splawn v. California*, 431 U.S. 595 at 598, 97 S.Ct. 1987 at 1989, 52 L.Ed.2d 606 at 612.

from all calculations mandated under that Act.