**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

PETER JAMES HOLLER,
            *Defendant-Appellant.*

No. 03-50129

D.C. No.
CR-01-00018-
VAP-3

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
December 9, 2004—Pasadena, California

Filed June 13, 2005

Before: Stephen Reinhardt, Cynthia Holcomb Hall, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Hall

**COUNSEL**

Diane E. Berley, West Hills, California, for the defendant-appellant.

Thomas P. O'Brien and Elizabeth M. Fishman, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

HALL, Senior Circuit Judge:

Defendant Peter James Holler appeals his convictions for conspiracy to possess cocaine with the intent to distribute and attempted possession of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1). We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and affirm in part.

## I.  BACKGROUND

This case arises out of a "reverse sting" operation in which defendant Peter James Holler conspired with co-defendants Nelson Palacio and Gustavo Estrada to purchase a large amount of cocaine from a confidential informant ("CI") working with the Drug Enforcement Administration ("DEA").

In January of 2001, the CI informed DEA agent Travis Lavigne that he knew of someone who wanted to purchase large amounts of cocaine in Los Angeles, California. On Feb-

ruary 2, 2001, the CI told Agent Lavigne that he had received a telephone call from a man named Chepe (co-defendant Palacio), who said he was coming to Los Angeles. Three days later, with Agent Lavigne's permission, the CI picked up Palacio from the airport and drove him to a hotel in Torrance, California. Later that day, the CI returned to the hotel where Palacio was staying to discuss the deal. Palacio told the CI that his client was arriving soon and that the client was prepared to purchase 100 kilograms of cocaine.

The next day, the CI returned to the hotel and met Palacio's partner, co-defendant Estrada. Palacio and Estrada told the CI that they had a client coming in from Canada, and that the client wanted to check out the cocaine before purchasing it. The CI told Palacio and Estrada that he had 1,200 kilograms of cocaine for sale.

On February 7, 2001, while the CI was wearing a wire, Estrada told the CI that the client would be arriving that night. That night, the CI received a call from Palacio telling him that the client had arrived, and setting up a meeting for the following morning.

The next morning, when the CI arrived at the hotel, Palacio and Estrada introduced him to defendant Peter James Holler. The CI then drove Estrada and Holler to a storage facility in Riverside, California, where they were met by undercover Deputy Sheriff Gregory Parra. In what is known as a "flash," Deputy Parra and the CI showed Holler and Estrada the cocaine. Holler put on a pair of rubber gloves and cut and sampled several individually packaged kilograms of cocaine. He then resealed the samples with duct tape. At trial, the government introduced pictures of Holler and Estrada sampling the cocaine at the storage facility. Within 15 or 20 minutes of arriving at the storage facility, Holler, Estrada and the CI left and headed back to the hotel.

Later that night, Palacio called the CI to discuss the price of the cocaine. The CI told Palacio that he would sell the cocaine for $13,000 per kilogram.

The next day, February 9, 2001, the CI again met with defendant Holler. At the meeting, Holler gave the CI a sample of cocaine to demonstrate the type of high quality cocaine he was looking to purchase. Subsequent testing by the DEA established that the sample was 5.4 grams of 94% pure cocaine. In a recorded conversation, Holler and the CI then negotiated the purchase of 50 kilograms of cocaine.

CI:        How much (unintelligible) you gonna need?

Holler:        Well, I bought 20 of these [referring to a one-kilogram brick of cocaine] last night, okay, now I got more money coming into town today, so what, what I'm thinking, probably I'm gonna pay for about 30 or 40 cash, okay?

CI:        Okay.

Holler:        And then, so if I buy 30 cash then I'm gonna want to take 15 credit, okay?

CI:        I'll give you 20 credit.

Holler:        Twenty credit? Okay.

The next day, the CI returned to Palacio's hotel room where Holler laid packages of money on the bed. Holler put the money in a bag and gave the bag to Palacio, telling the CI that there was $220,000 for a partial payment for the cocaine. According to the CI, after Holler left the room, Palacio took $40,000 and told the CI not to say anything to Estrada.

Two days later, on February 12, 2001, the CI spoke with Palacio, who indicated that Holler was ready and that he wanted to see more of the cocaine. The CI informed him that if he wanted to see more of the merchandise, he had to come up with the rest of the money.

Holler, Estrada, Palacio and the CI met later that night in the lobby of the Hilton hotel in Ontario, California, to complete the transaction. When Holler arrived, the CI told him to get the money. Holler left briefly and returned with a rolling suitcase containing approximately $130,000, which he gave to the CI. The CI said he would go drop off the money in his car, fill the suitcase with cocaine, and would then return it to Holler. Once the CI left, DEA agents arrested Holler, Estrada and Palacio. Also seized from Holler's vehicle after the arrest were two drug ledgers indicating types and prices of marijuana.

## II. DISCUSSION

### A. Jurisdiction

[1] Holler argues that the district court lacked jurisdiction under 21 U.S.C. §§ 841(a) and 846 because Holler never had possession of the cocaine and had no intent to distribute in the United States. Section 841(a) provides that, "it shall be unlawful for any person knowingly or intentionally . . . (1) to . . . possess with intent to . . . distribute, . . . a controlled substance." 21 U.S.C. § 841(a). Section 846 provides that, "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Whether a district court has jurisdiction is reviewed *de novo*. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

[2] Holler cites cases from the First and Fifth Circuits holding that courts lack jurisdiction where the defendant was

found with contraband on the high seas but never intended to distribute that contraband in the United States. *See United States v. Hayes*, 653 F.2d 8, 15 (1st Cir. 1981) (holding that "21 U.S.C. § 841(a) . . . does not apply to American vessels on the high seas unless the 'intent to distribute' is an intent to distribute in the United States"); s*ee also United States v. Baker*, 609 F.2d 134 (5th Cir. 1980).

However, these cases deal with defendants who were apprehended outside of the United States. In *Baker* and *Hayes*, the fact that the defendants intended to distribute contraband in the United States was only relevant insofar as it supplied a jurisdictional nexus that might have otherwise been lacking. *See United States v. Muench*, 694 F.2d 28, 33 (9th Cir. 1982) (discussing the extraterritorial jurisdiction in *Hayes* and *Baker*).

**[3]** This case, on the other hand, does not involve extraterritorial jurisdiction. Holler was arrested in Ontario, California, for conspiracy to possess cocaine with the intent to distribute and attempted possession of cocaine with the intent to distribute. Where, as here, the criminal acts are committed in the United States, the fact that the defendant intends to distribute contraband outside of the United States does not divest this court of jurisdiction. *United States v. Gomez-Tostado*, 597 F.2d 170, 172-173 (9th Cir. 1979).

**[4]** In *Gomez-Tostado*, the defendant was stopped in San Diego, California, en route to Mexico with five kilograms of heroin in his car. On appeal to the Ninth Circuit, Gomez-Tostado argued that the district court lacked jurisdiction under 21 U.S.C. § 841(a) because he intended to distribute the heroin in a foreign country. *Id.* at 172. The court rejected Gomez-Tostado's argument, holding that "we find nothing in the legislative history or language of section 841(a)(1) that suggests any congressional intent to limit the applicability of the statute to defendants whose intended distribution point is in this country." *Id.*

**[5]** Holler argues that *Gomez-Tostado* is inapplicable because the defendant in that case actually possessed contraband, whereas Holler was never in possession of the government supplied cocaine. However, Holler was convicted of conspiracy to possess cocaine and attempted possession of cocaine, and neither of these statutes require actual possession.

**[6]** Accordingly, we conclude that the district court had jurisdiction.

## B.   Outrageous Government Conduct

Holler argues that the district court erred by not dismissing his indictment for outrageous government conduct because (1) the CI had a history of misconduct as an informant and the DEA was aware of the prior misconduct, (2) the CI engaged in misconduct in this case, including the theft of drug money, and (3) the government ratified the CI's behavior. A claim that the indictment should be dismissed because the government's conduct was so outrageous as to violate due process is reviewed *de novo. United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003). The evidence is viewed in the light most favorable to the government and findings of fact underlying the dismissal are reviewed under a clearly erroneous standard. *Id.*; *see also United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991).

**[7]** "Outrageous government conduct is not a defense, but rather a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed." *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995). To meet this high standard, the "governmental conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice." *Barrera-Moreno*, 951 F.2d at 1092 (quotations omitted). Here, the CI's conduct was neither attributable to the government, nor was it "so excessive, flagrant, scandalous, intolera-

ble, and offensive as to violate due process." *United States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996) (quotations omitted). Moreover, as we noted in *United States v. Simpson*, 813 F.2d 1462, 1470 (9th Cir. 1987), "[i]t is unrealistic to expect law enforcement officers to ferret out criminals without the help of unsavory characters."

**[8]** Accordingly, we find that the misconduct complained of in this case, even if proved, does not rise to the level required to establish outrageous government conduct.

## C.   Right to Present a Defense, and *Brady* Error

Holler argues that he was denied his right to present a defense under *Davis v. Alaska*, 415 U.S. 308 (1974), because the district court failed to enforce its order to produce the CI's IRS tax records. Without these records, he argues, the defense was deprived of the opportunity to impeach the CI's credibility. Holler also argues that the failure to produce the CI's tax records was a *Brady* error, requiring reversal.

We review *de novo* whether a limitation on cross examination violated the defendant's right of confrontation. *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir. 1999). "The district court, however, has considerable discretion in restricting cross-examination, and this court will find error only when that discretion has been abused." *Id*. Alleged *Brady* violations are reviewed *de novo*. *United States v. Danielson*, 325 F.3d 1054, 1074 (9th Cir. 2003).

**[9]** A limitation on cross examination "does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant, and denies the jury sufficient information to appraise the biases and motivations of the witness." *Bensimon*, 172 F.3d at 1128 (quotations and citations omitted). A *Brady* violation has three components: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the

evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281.

**[10]** Holler's claims fail because the jury was presented with sufficient evidence to appraise the motivations of the CI, and any error in the lack of the CI's IRS records was not prejudicial. Given the other impeaching evidence introduced regarding the CI and the substantial evidence against Holler, including photographs of him testing the cocaine, recordings of purchase negotiations and the payment of over $350,000 towards the purchase of cocaine, any error with respect to the lack of the IRS records was harmless. *See United States v. Miguel*, 111 F.3d 666, 671 (9th Cir. 1997) (holding that the court must "determine whether the error was harmless in light of the importance of the witness's testimony in the entire case, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case").

## D. Prior Act Evidence

Over Holler's objection, the district court admitted evidence of three prior illegal drug transactions involving Holler. The district court's decision to admit evidence pursuant to Federal Rules of Evidence 403 and 404(b) is reviewed for abuse of discretion. *United States v. Rubio-Villareal*, 927 F.2d 1495, 1502 (9th Cir. 1991), *vacated in part and remanded on other grounds*, 967 F.2d 294 (9th Cir. 1992) (en banc). The issue of whether the evidence falls within the scope of Rule 404(b) is reviewed *de novo*. *Id.*; *see also United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993).

**[11]** According to the four-part test applied in this circuit, prior act evidence is admissible if (1) it proves a material ele-

ment of the charged offense; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the act; and (4) in cases where knowledge and intent are at issue, the act is similar to the offense charged. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). Additionally, Federal Rule of Evidence 403 requires the district court to balance the probative value of the evidence against its prejudicial effect. *Arambula-Ruiz*, 987 F.2d at 604.

**[12]** To knowingly and intentionally possess contraband with the intent to distribute is a specific intent offense. *See* 21 U.S.C. § 841(a)(1). As the court held in *Arambula-Ruiz*, defendant's prior conviction for possession of contraband with the intent to distribute is relevant to a material element of conspiracy to possess contraband with the intent to distribute and attempted possession of contraband with the intent to distribute, "because it tends to show knowledge." *Arambula-Ruiz*, 987 F.2d at 603; *see United States v. Schmidt*, 947 F.2d 362, 367 (9th Cir. 1991) (knowledge of the objective of the conspiracy is an material element of any conspiracy conviction).

**[13]** Additionally, any error with respect to the admission of prior act evidence was harmless for two reasons. First, the judge gave a limiting instruction. *See, e.g., United States v. Santa-Cruz*, 48 F.3d 1118 (9th Cir. 1995); *Arambula-Ruiz*, 987 F.2d at 604. Second, there was an abundance of substantial and direct evidence against Holler, including photographs of him testing the cocaine, recordings of purchase negotiations and the payment of over $350,000 towards the purchase of cocaine.

**[14]** Accordingly, we conclude that the district court did not abuse its discretion by allowing evidence of prior cocaine trafficking involving the defendant.

### E.   *Sentencing Challenges*

**[15]** Because Holler did not challenge his sentence on Sixth Amendment grounds in the district court, we grant a limited remand pursuant to *United States v. Ameline*, No. 02-30326, slip op. at 6368-71 (9th Cir. June 1, 2005) (en banc).

**AFFIRMED IN PART AND REMANDED.**