**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mohammed Reza MEHRMANESH,**
**Defendant-Appellant.**

**No. 81–1305X.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 14, 1981.

Decided June 11, 1982.

Rehearing Denied Aug. 5, 1982.

William F. McDonald, Jr., Tucson, Ariz., for defendant-appellant.

Negatu Molla, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before WALLACE and SCHROEDER, Circuit Judges, and HENDERSON,* District Judge.

* Honorable Thelton E. Henderson, United States District Judge, Northern District of California,

WALLACE, Circuit Judge:

Mehrmanesh was convicted of two counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and was sentenced to consecutive prison terms of 15 years on each count. Two principal issues are presented on appeal: (1) whether the offenses alleged in counts 1 and 2 of the indictment were in fact one offense for which only one sentence should have been imposed, and (2) whether the district court erred in denying Mehrmanesh's motion to prevent the government from using a prior conviction for purposes of impeachment and from inquiring into other "bad acts" upon cross-examination. We affirm.

I

On December 10, 1980, Sergeant Wolff of the Tucson, Arizona, Metropolitan Narcotics Squad discussed a possible heroin transaction with Melchi, a government informant. Melchi was to act as a liaison between the purported buyers, represented by Wolff, and the supplier, Mehrmanesh, through Mehrmanesh's associates Napier and Reedy.

Shortly after midnight on December 13, Melchi met with Mehrmanesh, Napier, and Reedy to discuss the sale of approximately 500 grams of heroin to Melchi's buyers. When Melchi asked for a sample to show to the buyers, Mehrmanesh stated that the heroin was buried in the desert and that it was then too late to get it. Mehrmanesh promised to have the heroin picked up and delivered to Reedy's home the next morning. Reedy testified that Mehrmanesh arranged for him to pick up the heroin from his wife. The next morning, Mehrmanesh's wife gave Reedy a tool box which contained over 500 grams of heroin wrapped in air-conditioning duct tape. Later that day, a Saturday, Napier furnished Melchi with a four-gram sample of heroin. This sample, however, was never delivered to the law enforcement authorities.

sitting by designation.

Because Melchi stated that the transaction could not be concluded over the weekend as the buyers had their money in a bank, Reedy, Napier, and Melchi drove to Tucson the following Monday to consummate the heroin transaction with Wolff. At Picacho Peak, between Phoenix and Tucson, Melchi indicated that the buyers wanted another sample and that this would be a convenient time for Reedy to give him one. Reedy complied and gave Melchi a sample of approximately 2.28 grams of heroin. This transfer formed the basis for the first count in the indictment.

After delivering the sample to the narcotics agents in Tucson, Melchi contacted Napier and Reedy and informed them that the buyers liked the sample and that he had seen the money. After the balance of the heroin was delivered to the agents, Reedy and Napier were arrested. The delivery of this heroin, approximately 594 grams, formed the basis for the second count in the indictment.

## II

■ Mehrmanesh contends that he should have been sentenced upon only one count. This raises the question of what Congress intended to be the "appropriate unit of prosecution" for violations of 21 U.S.C. § 841(a)(1).[1] *See United States v. Universal CIT Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). The issue is whether delivery of the sample can form the basis of a separate crime.

The government relies in part on the double jeopardy cases of *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), and *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). These cases, however, involve a different question than the one presented here. In *Gore*, the issue was whether a single narcotics sale could serve as the basis for convictions under three different statutory provisions. The Court

sustained the convictions and in doing so reaffirmed the *Blockburger* rule, which provides that two offenses may derive from the same act if each statutory provision requires proof of a fact which the other does not. But here we are not concerned with the question of whether the double jeopardy clause precludes separate convictions under two criminal statutes for the same act. Rather, we are concerned with the narrower question of what operative facts Congress intended to constitute a violation of 21 U.S.C. § 841(a)(1). We must determine whether Congress intended that the delivery of a sample, prior to the consummation of a narcotics sale, should be a separate and distinct violation of section 841(a)(1). *See United States v. Universal CIT Credit Corp., supra*, 344 U.S. at 221–23, 73 S.Ct. at 229–30; *United States v. Reed*, 647 F.2d 678, 681 (6th Cir. 1981).

Mehrmanesh contends that the distribution of the 2.28 grams of heroin as alleged in count 1 of the indictment was part of the total transaction to distribute all of the heroin as alleged in both counts and, therefore, count 1 should have been dismissed by the district judge on the ground that it was multiplicitous. In support of this "transactional approach," Mehrmanesh cites *United States v. Ferguson*, 498 F.2d 1001 (D.C.Cir.), *cert. denied*, 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 145 (1974), in which the District of Columbia Circuit held:

Finally, on the point of sentencing, we do find that the appellant has a valid objection. There clearly was intended to be one sale of narcotics; however, due to some misunderstandings, the full quantity of narcotics purchased was not delivered on May 19, 1969. Thus, the May 20, 1969, exchange, we believe, should be treated as part and parcel of the May 19 sale, and concurrent sentences should be imposed rather than consecutive ones under count one of each indictment.

---

1. 21 U.S.C. § 841(a)(1) provides:

    (a) ... it shall be unlawful for any person knowingly or intentionally—

    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance

    ....

*Id.* at 1009. The government correctly points out that *Ferguson* dealt with a violation of 26 U.S.C. § 4705(a), which was repealed and replaced by the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the Act). Section 4705(a) had provided for the issuance of order forms by the Secretary of the Treasury and required their use in the sale of narcotics. In the present case, Mehrmanesh was convicted of violating 21 U.S.C. § 841(a)(1), the part of the Act which makes distribution an offense. The conduct prohibited by this section is neither the sale of controlled substances nor being continuously engaged in the business of distributing controlled substances. As the Eighth Circuit observed in discussing the limits of the Act:

> These prior concepts have been discarded in the Controlled Substances Act which contains no sale or buying requirement to support a conviction; there is now an offense of participation in the transaction viewed as a whole. The Comprehensive Drug Abuse Prevention and Control Act of 1970 is extremely broad in scope, no longer restricted to the narrower concepts of buy and sell, but all inclusive in covering the entire field of narcotics and dangerous drugs in all phases of their manufacture, processing, distribution and use. All distribution is controlled or prohibited, legitimate or illegitimate. Any individual who participates in any manner in the unauthorized distribution of such "controlled substances" is amenable to the Act and the sanctions provided therein.

*United States v. Pruitt,* 487 F.2d 1241, 1245 (8th Cir. 1973).

Although the legislative history of the Act does not expressly reject Mehrmanesh's proposed transactional approach, a comparison of the language in the two statutes and an examination of the specific definitions provided in the Act reveal that Congress did not intend the unit of prosecution under section 841(a)(1) to be construed so broadly. This is especially true in light of the principal purpose of the Act: to deal in a comprehensive fashion with the growing menace of drug abuse in the United States and to strengthen existing law enforcement authority in the drug field. *See* H.R.Rep.No. 91–1444, 91st Cong., 2d Sess., *in* [1970] U.S. Code Cong. & Ad.News 4566, 4567.

The Act makes it a crime to ". . . distribute, or dispense . . . a controlled substance." 21 U.S.C. § 841(a)(1). Distribution is defined in section 802(11) as "to deliver (other than by administering or dispensing) a controlled substance." The term "deliver" is defined as an "actual, constructive, or attempted transfer of a controlled substance." *Id.* § 802(8). On its face, therefore, the Act proscribes each act of delivery, rather than each purchase or sale as under section 4705(a) of the old statute. By punishing deliveries rather than transactions, Congress has made it unnecessary to establish that a defendant participated in a particular transaction as either a buyer or seller, thus expanding the scope of the Act to parties who act merely as an agent for the buyer or seller. *See generally United States v. Pruitt, supra,* 487 F.2d at 1244–45. If the transactional approach urged by Mehrmanesh were accepted, courts would have the unenviable task of examining each transaction and determining whether a particular delivery was sufficiently separate from prior or future deliveries to constitute a distinct transaction separately punishable under section 841(a)(1). It seems unlikely that Congress intended to expand the scope of section 841(a)(1) to include all participants in the chain of distribution, while at the same time limit the scope of a single offense under the section only to those acts which are reasonably construed as constituting a distinct transaction between a buyer and seller. Yet, if we were to accept the reasoning used by the court in *Ferguson* and argued for by Mehrmanesh, we would impute just such an intent to Congress.

Nor is *United States v. Horton,* 601 F.2d 319 (7th Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979), inconsistent with our rejection of the transactional approach in interpreting section 841(a)(1). In that case, the evidence indicated that the defendant simultaneously delivered two packages of cocaine to a government agent.

The court stated: "One of the packages was for [the informant], the other for his buyer. Each of the two packages delivered was charged in a separate count. Because the record indicates *only a single distribution,* [the two counts] are multiplicitous." *Id.* at 325 (emphasis added). The court did not undertake an analysis of whether the existence of two purchasers resulted in two separate transactions, thus warranting the second count in the indictment. Rather, since the record only indicated a single delivery of the cocaine, and since the statute defines a "distribution" as a delivery of a controlled substance, *see* 21 U.S.C. § 802(11), the court concluded that a two-count indictment was multiplicitous.

In the present case there were clearly two deliveries of heroin, the first of the sample at Picacho Peak, and the second in Tucson of the remaining heroin. Mehrmanesh argues that the delivery of the sample was only a preliminary step to the consummation of a single drug transaction and thus should not be considered a separate "distribution" within the meaning of section 841(a)(1). During oral argument, Mehrmanesh's counsel argued that the delivery of a sample might in some circumstances constitute a distribution, such as where after the delivery of the sample the seller negotiates an agreement with a new buyer for the remaining portion of the heroin. However, when the original transaction is consummated as in the present case, he argued, the delivery of the sample should not increase the penalty since there is only one prohibited transaction undertaken.

If Congress had intended to limit the scope of the punishable offense to the total bargained-for "transaction" of controlled substances, it could easily have used language that would have manifested such an intent. It is not unreasonable to assume that Congress anticipated that by defining an offense under section 841(a)(1) as precisely as it did, it would deter the negotiation of drug transactions that contemplated multiple deliveries over an extended period of time, as well as transactions that involve such large amounts of controlled substances

that the delivery of a sample is a prerequisite to consummation of the sale. As the government's informant testified in the present case, "when you do a dope deal [it's] a standard procedure, to secure a sample to make sure they have what they say they have." In light of the purpose of the Act to provide a more effective means of law enforcement in the field of drug control, we refuse to impute an intent to Congress which is contrary to the express language of the statute and which could only be perceived as making law enforcement more burdensome and drug trafficking less hazardous.

Mehrmanesh contends, however, that even if the delivery of the sample constitutes a separate distribution, he cannot be found to have violated section 841(a)(1) pursuant to count 1 as he did not "knowingly or intentionally" distribute the sample as required by the statute. Mehrmanesh's counsel stated during oral argument that it would be a different question if Mehrmanesh had been convicted of entering into a conspiracy to distribute controlled substances. If this were the case, he argues, Mehrmanesh might be held guilty for his co-conspirators' acts of distribution under *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), provided that the acts were committed in furtherance of the conspiracy. The argument follows that, as there was no conspiracy charged in this case and since Mehrmanesh had no prior knowledge that Reedy would deliver a sample to Melchi at Picacho Peak, Mehrmanesh's requisite mental state under section 841(a)(1) is absent.

■ This argument assumes that Reedy could be found guilty of the count 1 offense but that Mehrmanesh could not because he lacked the requisite criminal intent. While this argument has a superficial plausibility, we find it unpersuasive. The key to the issue depends upon whether Mehrmanesh can be convicted as an aider and abettor in count 1. We conclude he can. The record indicates that Mehrmanesh had sufficient knowledge of the criminal plan and how it

would normally be carried out to find him guilty of aiding and abetting Reedy in the illegal distribution of the sample under section 841(a)(1). Thus under 18 U.S.C. § 2(a) he is guilty as a principal.[2]

In *Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), the Supreme Court applied the well-established theory of accomplice liability, equally as valid as the *Pinkerton* doctrine of co-conspirator liability, that one who aids and abets the commission of an act "is as responsible for that act as if he committed it directly." *Id.* at 618, 69 S.Ct. at 769. In order to find that Mehrmanesh aided and abetted Reedy in the distribution of the sample, it is necessary to establish that he "associate[d] himself with the venture, that he participate[d] in it as something he wish[ed] to bring about, and that he [sought] by his action to make it succeed." *Id.* at 619, 69 S.Ct. at 770, *quoting United States v. Peoni,* 100 F.2d 401, 402 (2d Cir. 1938). Of course, this does not relieve the government of the necessity of proving that Mehrmanesh possessed the requisite mental state for a violation of section 841(a)(1). As we have stated: "To find one guilty as a principal on the ground that he was an aider and abettor, it must be proven that he shared in the criminal intent of the principal . . . ." *Hernandez v. United States,* 300 F.2d 114, 123 (9th Cir. 1962), *quoting Johnson v. United States,* 195 F.2d 673, 675 (8th Cir. 1952). However, we have consistently held that the prosecution is not required to prove that the aider and abettor was aware of all the details of the planned offense. *See United States v. Short,* 493 F.2d 1170, 1172 (9th Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974). The defendant need not have the exact intent as the principal. The "community of unlawful intent" does not rise to the level of "agreement" in a conspiracy. *United States v. Beck,* 615 F.2d 441, 449 & n.9 (7th Cir. 1980). Thus, we cannot unduly limit the kind of evidence of intent necessary to convict Mehrmanesh of aiding and abetting in

the distribution of the sample. It is not necessary that the government prove that Mehrmanesh intended the sample to be delivered at a particular time (while traveling to Tucson) or at a particular place (at Picacho Peak).

The jury could properly conclude beyond a reasonable doubt that Mehrmanesh both associated himself with and participated in the distribution of the sample by Reedy at Picacho Peak. Melchi first informed Mehrmanesh that a sample was necessary to consummate the sale when they first met at Mehrmanesh's house on December 13. The fact that Mehrmanesh had knowledge of the need for a sample and intended that a sample be delivered is further supported by the fact that on Saturday morning he directed Reedy to pick up the heroin from his wife and that Melchi in turn obtained a four-gram sample of the heroin from Reedy. Furthermore, after Melchi received the sample at Reedy's house, Reedy telephoned Mehrmanesh and told him that Melchi was "going to Tucson to establish the deal," and Reedy testified that Mehrmanesh was in full agreement. Thus, it is clear that Mehrmanesh intended that Melchi deliver a sample to the buyers in order to consummate the sale. Melchi's testimony that the delivery of a sample was standard procedure in such a transaction, together with the fact that Reedy and Napier reacted to Melchi's request for a sample without hesitation on two occasions, indicates that the delivery of samples in a transaction involving over 500 grams of heroin is not at all unusual.

The fact that only one of two samples was actually delivered to the buyers prior to the sale itself does not alter our analysis. Criminal intent is often difficult to demonstrate by direct proof and must be inferred from the attendant facts and circumstances. *United States v. Groomer,* 596 F.2d 356, 358 (9th Cir. 1979). The facts in this case indicate that Mehrmanesh knew that in order

---

**2.** 18 U.S.C. § 2(a) provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels,

commands, induces, or procures its commission, is punishable as a principal.

for the transaction to be successful, that is, for the buyers to agree to purchase the entire quantity of heroin he was attempting to sell, Melchi would need to deliver to the buyers a representative sample which met with their approval. The sample received by Melchi at Picacho Peak was delivered exactly for that purpose and thus it cannot reasonably be argued that if Mehrmanesh had been informed that the original four-gram sample had not been received and examined by the buyers, he would have instructed Reedy not to deliver a second sample to Melchi. It is clear that he intended that a sample be delivered to the buyers. Therefore, the evidence, viewed in the light most favorable to the government, not only supports Mehrmanesh's intent to distribute the sample, but also indicates his participation in the venture as the supplier of the heroin charged in both counts. As the Fifth Circuit has stated, "[a] high level of activity need not be shown to prove participation . . . 'there must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that [the] defendant committed an overt act designed to aid in the success of the venture.'" *United States v. Beck, supra*, 615 F.2d at 449, *quoting United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978). Mehrmanesh participated in the venture by arranging for Reedy to obtain the heroin from which the sample was eventually furnished. Thus, Mehrmanesh engaged in conduct that was designed to aid Reedy and Napier in their attempt to deliver the Picacho Peak sample of the heroin to Melchi and thereby consummate the larger deal.

## III

The second major issue in this appeal concerns the propriety of the district judge's rulings on two motions made *in limine.* During the trial Mehrmanesh informed the court that he intended to testify. He moved for an order precluding the government from impeaching his credibility by the use of his prior conviction for importation of hashish. The district judge entertained argument from counsel and thereaft-

er made the explicit finding required by Fed.R.Evid. 609(a)(1) that the probative value of admitting evidence of the prior conviction outweighed the prejudicial effect to the defendant. He therefore denied Mehrmanesh's motion.

After reviewing the record, we cannot say that this was an abuse of discretion. *See United States v. Cook*, 608 F.2d 1175, 1187 (9th Cir. 1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). As the government argued to the district court, there was a reasonable possibility, given Mehrmanesh's counsel's opening statement, that Mehrmanesh would deny all involvement whatsoever in narcotics trafficking. As we said in a similar situation, "it is not surprising that [a] court [is] unwilling to let a man with a substantial criminal history misrepresent himself to the jury, with the government forced to sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness." *United States v. Cook, supra*, 608 F.2d at 1187. Since the prior conviction that the government intended to use involved the importation of 26 pounds of hashish in 1975, we are satisfied that the trial judge did not abuse his discretion in deciding that the jury should be advised of this prior conviction before it could make an accurate evaluation of the trustworthiness of Mehrmanesh's testimony.

Mehrmanesh also argues that the court erred in denying his motion *in limine* to prohibit the government from cross-examining him regarding prior bad acts. At the time of the trial in this case, Mehrmanesh was awaiting a second trial on charges of possession of controlled substances with the intent to distribute. Mehrmanesh anticipated that in the event he testified, the government would attempt to cross-examine him as to certain facts relevant to the upcoming prosecution. Mehrmanesh made a motion *in limine* to have the court order that such cross-examination would not be permitted. The district judge allowed

Mehrmanesh to testify outside of the presence of the jury. Mehrmanesh denied ever having entered into any heroin transaction with Reedy, and specifically denied entering any on December 13, the date in question. He also denied ever discussing anything with Reedy concerning large quantities of heroin. After Mehrmanesh testified, the government requested the opportunity to cross-examine him, if he decided to take the stand, about certain facts relating to the second prosecution, including whether he had told Reedy that the police had only found one half of the opium involved, and whether he had told law enforcement officers that he had the opium in a package wrapped with air-conditioning duct tape, as in the present case. The district judge ruled that Mehrmanesh could be cross-examined on these matters. Upon the advice of counsel, Mehrmanesh declined to testify.

In *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1353–54 (9th Cir. 1981), we held that a defendant who testifies at his trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during direct examination. While Fed.R.Evid. 608(b) provides that specific instances of conduct of a witness not resulting in a criminal conviction "may not be proved by extrinsic evidence" solely for the purpose of attacking his credibility, the rule also provides that such bad acts may be inquired into on cross-examination to impeach a witness's testimony if those acts are probative of his character for truthfulness and their probative value outweighs their prejudicial effect. Fed.R.Evid. 608(b); *United States v. Green*, 648 F.2d 587, 596 & n.12 (9th Cir. 1981) (per curiam).

■ After reviewing the testimony that Mehrmanesh made in the absence of the jury and the statements by the government as to proposed cross-examination, we conclude that the district judge did not abuse his discretion in denying Mehrmanesh's motion to restrict the scope of the government's cross-examination. Mehrmanesh's testimony indicated that he intended to put into issue the question of whether he had ever transacted or dealt in controlled sub-

stances, in particular whether he had conducted such business with Reedy, at any time and specifically on December 13. The proposed cross-examination into areas such as Mehrmanesh's admission that he possessed opium in a similarly wrapped package and whether he had discussed other transactions in controlled substances with Reedy would have directly related to the credibility of his testimony that he had never conducted illegal narcotics transactions. Thus, cross-examination as to his prior discussions with Reedy and law enforcement officers would have been proper under both Rule 608(b) and our decision in *Miranda-Uriarte*.

■ The district judge ruled as best he could based upon what was presented to him. He did state: "I can't specify any limit because I don't know what all of the things are that they intend to cross-examine him about." Mehrmanesh also contends this ruling somehow deprived him of his fifth amendment rights. What he does not advise us is that the lawyers agreed, with the consent of the court, to discuss during the noon recess what further cross-examination was contemplated by the government. After the recess, there is no indication in the record that the agreed discussion did not occur or that Mehrmanesh was not fully informed of the scope of the proposed cross-examination. No further motion was made by Mehrmanesh, and he does not now claim that he was unaware of the recess discussion. Therefore, we find no error in the ruling of the district court.

Mehrmanesh states in his brief that he was also asking the district court to restrict the government from the "use of extrinsic evidence to prove that [Mehrmanesh] was previously arrested" pertaining to the second prosecution. However, he has cited to us no authority supporting his right to receive an *in limine* order on this point. *See United States v. Cook, supra*, 608 F.2d at 1188 (Wallace, J., concurring). Allowing the government to introduce extrinsic evidence of his prior arrest would have been improper under Rule 608(b). *United States v. Bosley*, 615 F.2d 1274, 1275–77 (9th Cir.

1980). Nothing in the record even remotely suggests that if Mehrmanesh had decided to testify, the district court would have allowed the government to introduce such improper evidence. Only bald speculation, therefore, supports Mehrmanesh's contention that the district court's failure to grant his motion impermissibly chilled him from the exercise of his desire to take the stand in his own defense. On the contrary, the record clearly shows that his decision not to testify was voluntary, intelligent, and the product of the advice of counsel. The district judge did not abuse his discretion or violate Mehrmanesh's fifth amendment privilege.

AFFIRMED.

SCHROEDER, Circuit Judge, dissenting in part:

I concur in part III of the majority opinion upholding the district court's rulings on the motions *in limine*. I dissent from part II of the opinion which holds that the appellant, on this record, was properly convicted of two counts and sentenced to two consecutive 15-year terms. While I agree that deliveries of a sample and of the larger quantity could, in some circumstances, constitute two separate offenses under 21 U.S.C. § 841(a)(1), I cannot agree that Mehrmanesh, who did not participate in the distribution of the sample charged in the indictment, who did not plan it, and who was not even aware that it was taking place, could properly have been convicted of aiding and abetting its commission.

With respect to the essential element of intent, the government's burden is quite clear: an aider and abettor must have the intent to do the act of which he is convicted. "A defendant to be an aider and abettor must know that the activity condemned by the law is actually occurring and must intend to help the perpetrator." *United States v. McDaniel*, 545 F.2d 642, 644 (9th Cir. 1976), *citing* R. Perkins, *Criminal Law* 645 (2d ed. 1969). *Accord, United States v. Andreen*, 628 F.2d 1236, 1245 (9th Cir. 1980); *United States v. Tarr*, 589 F.2d 55, 59 (1st Cir. 1978); *United States v. Barnett*, 507 F.Supp. 670, 673–74 (E.D.Cal.1981).

Affirmance of both these convictions, therefore, requires a showing of intent with respect to each of the deliveries of which Mehrmanesh was convicted. If, as the majority holds, the delivery of the sample constitutes a separate offense, there must have been a showing of intent to assist in its commission. There was none.

The record shows only that Mehrmanesh was present when others discussed a sample. The record is devoid of evidence suggesting that Mehrmanesh was anything more than indifferent as to whether any sample was ever delivered. I disagree with the statement in the majority opinion that Mehrmanesh was informed that a sample would have to be delivered to the ultimate buyer in order to consummate the deal. Mere awareness of the likelihood of such a distribution falls short of the required showing that Mehrmanesh intended to aid and abet it. The majority also suggests that it was appropriate for the jury to conclude that he would have approved the Picacho delivery had he known of it. This is sheer speculation without support in the evidence or in any theory articulated to the jury.

I would affirm the conviction on count II and vacate the conviction and sentence on count I.