**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Joseph SMITH, Defendant-Appellee.**

No. 86–1292.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1987.

Decided Nov. 20, 1987.

Hart & Wolff, Brook Hart, Honolulu, Hawaii, for defendant-appellee.

Michael A. Santoki, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellant.

Before WALLACE, NORRIS and NOONAN, Circuit Judges.

WALLACE, Circuit Judge:

The government appeals from the district court's order granting a new trial following Smith's conviction by a jury for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Disagreeing with the district court, the government contends that there was sufficient evidence to convict Smith for aiding and abetting the commission of the substantive offense charged in the indictment. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3731. We reverse the district court's order and reinstate Smith's conviction.

I

From the late 1960's until the early 1980's, Makaweo and Harbin were partners in a conspiracy to distribute cocaine in Hawaii. Smith supplied cocaine to Makaweo through Suber, a person whose role was to obtain large quantities of cocaine for the Makaweo organization for subsequent redistribution. Suber testified that he made three of his cocaine purchases for Makaweo from Smith.

Suber first met Smith in Hawaii in the spring of 1983. Approximately one year after this initial encounter, Smith visited Hawaii and informed Suber that he could supply cocaine in multi-kilogram quantities. On April 22, 1984, Suber called Smith, who was then in San Francisco, and told him that he was coming to San Francisco to purchase a kilogram of cocaine. Smith said that he could provide the cocaine and that Suber should contact him when he arrived. The following day, Suber and Hunt, another middleman in the Makaweo organization, traveled to San Francisco with a large sum of money for the purpose of purchasing a kilogram of cocaine to bring back to Hawaii. That evening, they met with Smith and consummated the purchase of cocaine. The following day, they returned to Hawaii.

In the next four to five months, Suber and Smith completed two more cocaine sales. In both of these transactions, unlike the first, Smith traveled to Hawaii with the cocaine. Makaweo himself was directly involved on these occasions in the exchange of money for cocaine. On one of these visits, Smith was within sight of Makaweo.

In October 1984, Suber traveled to San Francisco to purchase more cocaine from Smith and to establish a new "code" for the next transaction. Although Suber and Smith met, the proposed transaction was never completed because Suber was arrested on an unrelated drug charge.

Suber eventually agreed to cooperate with the Drug Enforcement Administration (DEA) in securing evidence against the distribution ring. Between January 31, 1985, and May 23, 1985, Suber placed a series of tape-recorded telephone calls to Smith to arrange additional cocaine transactions. In these recorded telephone conversations, the two men arranged for a two kilogram purchase using code language. This transaction, however, was never completed, apparently because Smith could not assemble the

necessary quantity of cocaine. In subsequent tape-recorded conversations, Smith expressed both a willingness and ability to go forward with the planned transaction. Nonetheless, no additional transaction ever resulted from these conversations.

A thirty-four count indictment was filed in the district court in Hawaii against twenty persons alleged to be participants in the drug ring. On the basis of the first sale of cocaine to Suber in San Francisco in April 1984, Smith was charged with possession of cocaine with intent to distribute and with conspiracy to distribute cocaine. During the trial, the jury was instructed on the possession count based upon two separate theories. The first theory was that Smith had aided and abetted Suber in the possession of cocaine with intent to distribute in Hawaii. The second theory was that Smith, if found guilty of the conspiracy charge, could be convicted of the possession by Suber as a co-conspirator under a *Pinkerton* theory. *United States v. Pinkerton*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The jury returned a verdict convicting Smith on the possession count. Because the jury was unable to decide whether Smith should be convicted on the conspiracy count, a mistrial on that count was declared as to Smith.

Smith moved for a new trial on the possession count. The district judge granted the motion. He reasoned that because the jury failed to convict Smith of conspiracy, his conviction for possession could not be sustained on a *Pinkerton* theory. Hence, the only basis on which the jury could have convicted Smith of possession was on the aiding and abetting theory. The district court, however, concluded that the evidence failed to support a conviction on an aiding and abetting theory because nothing more was established than a single, isolated sales transaction. That San Francisco sale, the district judge held, was not connected, by itself, to the possession for distribution of the purchased cocaine in Hawaii. In arriving at his conclusion, the district judge held that an aiding and abetting theory could be supported only by evidence relating to the specific sale charged in the in-dictment, and not by any prior or subsequent events.

## II

On appeal, the government asserts that the district court's order granting a new trial was really a judgment notwithstanding the verdict and hence on review, we must reinstate the jury's verdict so long as there was evidence from which any rational trier of fact could find Smith guilty beyond a reasonable doubt. Smith, on the other hand, argues that the district court's order granting a new trial was precisely that and consequently, we can reverse the order only if we find that granting a mistrial under the circumstances was an abuse of discretion. We need not resolve this dispute, however, because the first issue before us does not involve a review of the evidence, but is one of law: what evidence may be considered in determining whether a defendant has aided and abetted the commission of a crime. Thus, we conclude that the de novo standard of review is appropriate. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Based on that standard, we conclude that the district court erroneously held that any evidence in support of the aiding and abetting theory must concern the specific sale for which Smith was indicted. We hold instead that evidence of negotiations and illicit transactions both prior and subsequent to the specific sale described in the count can be used to establish a seller's guilt as an aider and abettor.

In *Nye & Nissen v. United States*, 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949) (*Nye & Nissen*), the Supreme Court enunciated the elementary rule of accomplice liability: one who aids and abets the commission of a crime "is as responsible for that act as if he committed it directly." Congress has incorporated this principle into 18 U.S.C. § 2, which provides that anyone who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense "is punishable as a principal." *See United States v. Barnett*, 667 F.2d 835, 841 (9th Cir.1982)

(*Barnett*). "Aiding and abetting, as used in 18 U.S.C. § 2, means to assist the perpetrators of a crime." *Id., quoting United States v. Lane,* 514 F.2d 22, 26 (9th Cir. 1975). Both our court and other circuits have held that a supplier of controlled substances can be convicted for aiding and abetting the recipient's subsequent possession for distribution. *See, e.g., United States v. Mehrmanesh,* 682 F.2d 1303 (9th Cir.1982) (*Mehrmanesh*); *United States v. Buckhanon,* 505 F.2d 1079 (8th Cir.1974); *United States v. Aguirre-Aguirre,* 716 F.2d 293, 298 (5th Cir.1983); *United States v. Brantley,* 733 F.2d 1429 (11th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985); *United States v. Raper,* 676 F.2d 841 (D.C.Cir.1982).

■ To convict Smith for aiding and abetting Suber in the crime of possession of cocaine with intent to distribute, the evidence must establish that Smith "associate[d] himself with the venture, that he participate[d] in it as something he wish[ed] to bring about, and that he [sought] by his action to make it succeed." *Nye & Nissen,* 336 U.S. at 619, 69 S.Ct. at 770, *quoting United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938). Although convicting a person for aiding and abetting requires proof that he "shared in the criminal intent of the principal," *Hernandez v. United States,* 300 F.2d 114, 123 (9th Cir. 1962), *quoting Johnson v. United States,* 195 F.2d 673, 675 (8th Cir.1952), the government need not prove that the defendant was aware of every detail of the impending crime, *Mehrmanesh,* 682 F.2d at 1308; *United States v. Short,* 493 F.2d 1170, 1172 (9th Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974), nor that he be present at, or personally participate in, committing the substantive crime. *Mehrmanesh,* 682 F.2d at 1308–09; *United States v. Sampol,* 636 F.2d 621, 676 (D.C.Cir.1980). The evidence linking the defendant to the substantive offense can be circumstantial. *See Nye & Nissen,* 336 U.S. at 619, 69 S.Ct. at 769–70. We believe, moreover, that to the extent that evidence of prior and subsequent negotiations and illicit transactions bears on the issue of a defendant's intent to assist in the perpe-

trating of the specific criminal act charged in the indictment, such evidence can be used to convict a defendant of aiding and abetting.

### III

To determine whether the district court's erroneous application of the law requires reversal, we must apply the correct rule to the case as disclosed by the record. In doing so, we essentially determine whether there was evidence from which any rational jury could find Smith guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

■ It is not in dispute that Smith sold a large quantity of cocaine to Suber in San Francisco. The issue, rather, is whether together with evidence of prior and subsequent contacts between Smith and Suber, Smith can be convicted for aiding and abetting Suber's possession of cocaine with intent to distribute in Hawaii. Suber testified during the trial that prior to the San Francisco sale, he and Smith had met in Hawaii to discuss the possibility of Smith supplying him with large amounts of cocaine. Evidence of such prior communications to discuss potential criminal transactions can be used to establish that the parties had an ongoing relationship or agreement. *See United States v. Mancillas,* 580 F.2d 1301, 1307 (7th Cir.1978).

■ During this meeting, Smith informed Suber that he could deliver multi-kilogram quantities of cocaine on demand. Surely, no one supplying such large shipments of cocaine could reasonably believe that it would be used for some purpose other than redistribution. *See United States v. Castellanos,* 731 F.2d 979, 984–85 (D.C.Cir.1984); *United States v. Warner,* 690 F.2d 545, 551 n. 10 (6th Cir.1982). Other circuits have concluded that quantity alone may be sufficient for a jury to infer the intent to redistribute a controlled substance. *United States v. Murray,* 753 F.2d 612, 616 (7th Cir.1985); *United States v. Prieskorn,* 658 F.2d 631, 634–35 (8th Cir. 1981) (*Prieskorn*); *United States v. Mag-*

*nano,* 543 F.2d 431, 434 (2d Cir.1976) (*Magnano*), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977). The courts in both *Magnano,* 543 F.2d at 434, and *Prieskorn,* 658 F.2d at 635, recognized that the sale of several pounds of cocaine supports an "inference or presumption" that the supplier knew that he was "a part of a venture which extend[ed] beyond his individual participation.... By virtue of this quantity, the vertical nature of the conspiracy was known to the suppliers and customers." In *Direct Sales Co. v. United States,* 319 U.S. 703, 705, 63 S.Ct. 1265, 1266–67, 87 L.Ed. 1674 (1943) (*Direct Sales*), the Supreme Court held that quantity was an important factor to be considered in determining whether the supplier of a controlled substance was aware that the buyer was engaged in its unlawful redistribution. As in *Direct Sales* and *Magnano,* resale of the cocaine by the purchaser was the most likely, if not certain, result of Smith's illegal sale. Because Smith must undoubtedly have understood that, we cannot say that under the circumstances convicting him for aiding and abetting Suber's possession with intent to distribute was improper.

Smith's involvement in the redistribution of cocaine in Hawaii was, in fact, much more than mere passive indifference to the probable consequences of his supplying a large quantity of cocaine. Indeed, he actively desired that Suber's efforts to redistribute the cocaine in Hawaii succeed. He knew that on April 23, 1984, Suber was flying from Hawaii to San Francisco for the purpose of purchasing a large quantity of cocaine from him. A rational trier of fact could reasonably infer that Smith knew that Suber would return to Hawaii with the cocaine, where it would be distributed. From these facts alone, one could readily conclude that Smith was a "wholesale" supplier of cocaine who saw an opportunity to expand into the Hawaiian "retail" market. Smith undoubtedly understood that the success of his wholesale operations was intimately tied to the success of the distribution venture in Hawaii. In *Direct Sales,* 319 U.S. at 713, 63 S.Ct. at 1270, the Supreme Court succeeded in finding "inter-

ested cooperation, stimulation, [and] instigation," and not mere "acquiescence, carelessness, [and] indifference," in a drug wholesaler's supplying a large quantity of morphine over a period of several years to a small town doctor. The Court concluded that the company had a "stake in the venture" from its "making the profits which it knew could come only from its encouragement of" the buyer's illicit resale. *Id.* Simply put, a rational juror could conclude beyond a reasonable doubt that Smith, by cultivating a relationship with Suber, who he realized was a drug dealer in Hawaii, sought to "associate himself" with the Hawaiian distribution venture, that "he participate[d] in it as something that he wish[ed] to bring about" through his efforts in supplying multi-kilogram quantities of cocaine to the venture, and that in offering and actually supplying the drugs, "he [sought] by his action to make [the venture] succeed." *Nye & Nissen,* 336 U.S. at 619, 69 S.Ct. at 770, *quoting United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938).

■ As we pointed out earlier, the fact that Smith may not have known the precise details of how the distribution venture would operate is of no consequence. *Barnett,* 667 F.2d at 841; *Mehrmanesh,* 682 F.2d at 1308. Nor does the fact that more than a year transpired before Suber took up Smith on his offer to supply kilogram quantities of cocaine "break the actual connection between the commission of the crime and the advice to commit it." *Barnett,* 667 F.2d at 841.

We recognize that Smith may not have specifically intended that Suber resell the cocaine once he returned to Hawaii. But the fact that the "community of unlawful intent" between Smith and Suber does not rise to the level of a conspiratorial "agreement" to distribute cocaine in Hawaii does not save Smith from a conviction for aiding and abetting. See *Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954) (*Pereira*); *Mehrmanesh,* 682 F.2d at 1308; *United States v. Cowart,* 595 F.2d 1023, 1031 (5th Cir.1979) (*Cowart*). Once there is proof that Smith "engaged in some affirmative conduct de-

signed to aid in the success of the venture," the only intent required for aiding and abetting is *"knowledge that his actions would assist the perpetrator,* the principal of the crime." *Cowart,* 595 F.2d at 1031. The fact that Smith must have known that Suber could be purchasing such large quantities of cocaine only for unlawful redistribution and that his own continued fortunes depended ultimately on the ability of Suber and the rest of the Makaweo organization to resell the cocaine in Hawaii is sufficient evidence upon which to sustain a conviction for aiding and abetting.

Any doubt that may have existed as to Smith's ultimate objectives in developing a relationship with Suber is erased when we look at events that occurred subsequent to the San Francisco sale. On two later occasions, Smith delivered cocaine to the Makaweo organization in Hawaii after being contacted by Suber to arrange the transactions. On the basis of these two visits to Hawaii and the tape-recorded telephone conversations that occurred when Suber agreed to cooperate with the DEA, a rational juror could reasonably have concluded that Smith realized that he was dealing with a major drug distribution chain in Hawaii headed by Makaweo. In these conversations, it is unquestionable that Smith continued to express interest in arranging future drug sales. These subsequent events reinforce the reasonable conclusion that ever since his first encounter with Suber in Hawaii, Smith had intended to develop an ongoing supplier relationship with a major drug distribution ring in Hawaii.

Viewed in this light, the initial San Francisco sale could readily be seen by a juror as the first of what would be many large cocaine transactions, and that the number of subsequent sales would depend ultimately on the success of the drug ring in distributing this shipment. Hence, this is not a case involving nothing more than a simple, isolated purchase. On the contrary, a rational jury could easily find that Smith "was part of an ongoing scheme in which he had an agreement/understanding" with Suber, a key co-conspirator in the Makaweo

organization. *See United States v. Solomon,* 686 F.2d 863, 876 (8th Cir.1982) (sustaining a conviction for aiding and abetting the sale of stolen goods on the basis of a single purchase, when the court determined that the purchase was pursuant to an ongoing criminal scheme). We conclude that a rational jury could have found beyond a reasonable doubt a sufficient "community of unlawful intent" to convict Smith for aiding and abetting the distribution of cocaine in Hawaii.

### IV

■ We are aware of those cases that suggest that a single, isolated transaction between a buyer and seller may be insufficient to establish accomplice liability. *See, e.g., United States v. Ford,* 324 F.2d 950, 952–53 (7th Cir.1963); *United States v. Varelli,* 407 F.2d 735, 748 (7th Cir.1969). But these cases involved convicting a person for *conspiracy,* which requires a higher threshold of "common purpose" or "agreement" than convicting one for aiding and abetting. *See Pereira,* 347 U.S. at 11, 74 S.Ct. at 364 (holding that aiding and abetting does not require any agreement, but merely that one "consciously shares in a criminal act"). More important, the case before us does not involve a single isolated transaction because a jury can reasonably impute to Smith knowledge of Suber's intent to redistribute the cocaine. When one supplies cocaine knowing that the buyer intends to redistribute it, one cannot reasonably rely on the defense that it was a simple buyer-seller relationship. *See United States v. Mayo,* 721 F.2d 1084, 1087–88 (7th Cir.1983).

To the extent that the district court is correct that a single isolated sales transaction is insufficient to show aiding and abetting of the subsequent possession for distribution by the buyer, and that some "plus" factor must be shown, that burden has been met on the record before us. We hold therefore that the district court erred in holding that the evidence presented at trial supports nothing more than the exist-

ence of a single, transient sales transaction.

REVERSED.