**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Hugo COLLAZOS–MUNOZ, aka Hugh
Collazos–Munoz Defendant—
Appellant.**

Nos. 01–30250, 01–30251, 01–30253.

D.C. Nos. CR–00–00105–RHW, CR–00–00054–RHW, CR–00–00058–RHW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 2002.

Decided Nov. 15, 2002.

Before HAWKINS and GOULD, Circuit Judges, and WARE,* District Judge.

## MEMORANDUM **

Hugo Collazos–Munoz ("Collazos") appeals his conviction and sentence, after a jury trial on three separate indictments, all of which were consolidated for trial and appeal. With respect to the charges in the first two indictments, Collazos was convicted and sentenced for conspiracy to receive and pass counterfeit currency in violation of 18 U.S.C. §§ 371, 472, and 473. From the charges in the third indictment, Collazos was convicted and sentenced for one count of conspiracy to import over five kilograms of cocaine in violation of 21 U.S.C. §§ 952, 960, and 963; two counts of importation of a controlled substance in violation of 21 U.S.C. § 952; two counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C.

§ 841(a)(1); and two counts of aiding and abetting in violation of 18 U.S.C. § 2.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm Collazos' conviction and sentence.

### 1. *Relevance Objections*

The district court did not abuse its discretion in admitting Exhibits 30, 31, 49, 51, and 52 over Collazos' relevancy objections. A trial judge has wide latitude in passing on the admissibility of evidence. *United States v. Kearney*, 560 F.2d 1358, 1369 (9th Cir.1977) *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

■ Exhibit 30 and 31 are handwritten notes containing what purport to be telephone numbers for a person named "Tony." Both exhibits were found in Jeremy Standow's bedroom and in his handwriting. Standow was a co-conspirator with Todd Shipman and "Tony" to import counterfeit currency. Shipman testified that while on a trip to obtain counterfeit currency in Colombia, he dealt with a man known as "Tony," whom he later identified as Collazos. The fact that a co-conspirator had a note with a name and telephone number he identified as Collazos makes it more probable that Collazos was part of a conspiracy with Standow to import counterfeit currency. Whether Collazos was part of such a conspiracy was consequential to the determination of the trial.

---

* Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

■ Exhibit 49 consists of handwritten notes found in Jason Schulwitz's residence, with the first names "Jeremy", "Rod" and "Ryan," along with figures of amounts. The government argued at trial that the names corresponded to co-conspirators Jeremy Standow, Rodney Unger, and Ryan Bishop. These notes were relevant as an intermediate fact to show the nature and extent of the conspiracy to import drugs, which was relevant in establishing Collazos' connection to the conspiracy to import cocaine.

■ Exhibit 51 is a vehicle title document showing Jason Schulwitz's residence as 3520 East 30th, Spokane, Washington. This evidence was admissible to show Schulwitz's dominion and control over this residence and demonstrated the relevance of items seized from the residence, including notes with the first names of co-conspirators and figures of amounts.

■ Exhibit 52 is a bail bond document. The government offered this exhibit into evidence to show that Jason Schulwitz had obtained bond for Hoy, a co-conspirator. Hoy testified that he ran various errands for Schulwitz, and in return, Schulwitz assisted Hoy with a number of financial obligations, including bailing Hoy out of jail. The bail bond document corroborates Hoy's testimony, making it more probable than not that the nature and extent of the conspiracy was as the government alleged.

### 2. *Insufficiency of Evidence*

Collazos argues the evidence was insufficient to convict him on all counts. The standard of review on a sufficiency of evidence claim is *de novo. United States v. Duran,* 189 F.3d 1071, 1078 (9th Cir.1999), *cert. denied,* 529 U.S. 1081, 120 S.Ct. 1706, 146 L.Ed.2d 509 (2000). There is sufficient evidence to support the conviction if, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Duran,* 189 F.3d at 1078.

### A. *Controlled Substance Conspiracy*

In CR–00–105, Collazos was convicted and sentenced for one count of conspiracy to import over five kilograms of cocaine (21 U.S.C. §§ 952, 960, 963); two counts of importation of a controlled substance (21 U.S.C. § 952 and 18 U.S.C. § 2); and two counts of possession with intent to distribute a controlled substance (21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2).

### 1. Conspiracy to import five or more kilograms of cocaine.

To prove a conspiracy under 21 U.S.C. § 963, the government must show: (1) an agreement to accomplish an illegal objective; and (2) the intent to commit the underlying offense. *United States v. Iriarte–Ortega,* 113 F.3d 1022, 1024 (9th Cir. 1997), *cert. denied,* 523 U.S. 1012, 118 S.Ct. 1209, 140 L.Ed.2d 330 (1998). An overt act is not required to sustain a conviction under section 963. *United States v. Montgomery,* 150 F.3d 983, 998 (9th Cir.1998), *cert. denied,* 525 U.S. 917, 119 S.Ct. 267, 142 L.Ed.2d 220 (1998). Once the necessary intent is established, evidence showing a "slight connection" between defendant and the conspiracy is sufficient. *United States v. Vaughn,* 797 F.2d 1485, 1492 (9th Cir.1986). This circuit has defined the term "slight connection" to mean that "a defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details." *United States v. Herrera–Gonzalez,* 263 F.3d 1092, 1095 (9th Cir.2001) *cert. denied,* 534 U.S. 1117, 122 S.Ct. 928, 151 L.Ed.2d 891 (2002). Furthermore, a defendant's connection to the conspiracy can be inferred from circumstantial evidence. *Id.*

In *United States v. Toomey*, though no physical evidence of any narcotics was admitted into evidence, there was sufficient circumstantial evidence to allow the jury to conclude that the defendant conspired to import heroin into the United States. 764 F.2d 678, 681 (9th Cir.1985), *cert. denied*, 474 U.S. 1069, 106 S.Ct. 828, 88 L.Ed.2d 799 (1986).

■ Here there was sufficient evidence for the jury to find beyond a reasonable doubt that Collazos was part of the conspiracy to import cocaine into the United States. In reviewing the evidence presented at trial, Hutchinson was to be paid $10,000 for setting Schulwitz up with Collazos, a new supplier of cocaine. Co-Conspirator Burland positively identified Collazos as the man with whom he met on both of his trips to Colombia. Burland and Collazos discussed how the cocaine was packaged for importation, and Collazos demonstrated the effectiveness of that packaging. Frasu and Collazos discussed Frasu's planned trip to Colombia to import two to three kilograms of cocaine. Schulwitz owed Collazos between $30,000 to $40,000 for "fronted" drugs. Bruce Veal, a former cellmate of Collazos, with no connection to this case, testified that Collazos was connected to the conspiracy to import cocaine. Furthermore, there was evidence of telephone calls made, Western Union money transfers sent, and a fax sent between Collazos and one or more co-conspirators.

■ In addition, there was sufficient evidence for the jury to find beyond a reasonable doubt that the quantity of cocaine exceeded five kilograms. First, there were various meetings among the co-conspirators regarding the importation of three to four kilograms of cocaine per trip from Colombia. On Burland's second trip to Colombia, he brought back approximately two kilograms of cocaine. Standow returned from Colombia with approximately two kilograms of cocaine. Finally, Schulwitz typically imported approximately three kilograms of cocaine from Colombia per trip.

Viewing this evidence in the light most favorable to the government, a rational trier of fact could conclude beyond a reasonable doubt that Collazos was involved in a conspiracy to import five kilograms or more of cocaine. The evidence showed that there was an agreement to do the illegal act and an intent to carry it out. Moreover, the evidence included testimony of overt acts of importation showing that Collazos and his co-conspirators intended to import five kilograms or more of cocaine. Finally, the evidence at trial revealed that Collazos was a supplier of cocaine, and thus had more than a "slight connection" to the conspiracy. Accordingly, there was sufficient evidence for a rational trier of fact to conclude that Collazos was part of a conspiracy to import five kilograms or more of cocaine.

2. Importation of a controlled substance.

■ Title 21 U.S.C. § 952 prohibits the importation of cocaine into the United States. Anyone who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense "is punishable as a principal." 18 U.S.C. § 2(a); *see United States v. Barnett*, 667 F.2d 835, 841 (9th Cir.1982). There was sufficient evidence for the jury to find beyond a reasonable doubt that Collazos aided in the importation of cocaine. First, Collazos provided approximately two kilograms of cocaine to Nakia Burland in Colombia. Second, Jeremy Standow traveled to Colombia and brought back approximately two kilograms of cocaine. Third, Collazos provided scuba gear containing cocaine to Standow. Viewing this evidence in the

light most favorable to the government, the evidence is sufficient for a rational trier of fact to conclude that Collazos associated himself with a scheme to smuggle cocaine into the United States and intentionally assisted the venture's illegal purpose.

3. Aiding and abetting in the crime of possession of cocaine with intent to distribute.

■ To convict a defendant for aiding and abetting in the crime of possession of cocaine with intent to distribute, the evidence must show that the defendant (1) associated himself with the venture; (2) participated in the venture; and (3) sought through his actions to make the venture succeed. *United States v. Smith,* 832 F.2d 1167, 1170 (9th Cir.1987) (citing *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949)). The government need not prove that the defendant was aware of all the details of the crime nor that he was present at, or personally participated in committing the crime. *United States v. Mehrmanesh,* 682 F.2d 1303, 1308–1309 (9th Cir.1982). Furthermore, this Circuit has held that "a supplier" of controlled substances "can be convicted for aiding and abetting the recipient's subsequent possession for distribution." *United States v. Smith,* 832 F.2d at 1170.

There was sufficient evidence for the jury to find beyond a reasonable doubt that Collazos aided in the crime of possession of cocaine with intent to distribute. First, a number of the co-conspirators were present at meetings to discuss the possibility of importing three to four kilograms of cocaine from Colombia per trip. Second, Collazos aided Schulwitz, who was directly involved in the redistribution of cocaine, by providing scuba gear containing at least four kilograms of cocaine to

Burland and Standow in Colombia. In doing this, Collazos engaged in affirmative conduct designed to aid in the success of Schulwitz's venture, and thus "associated himself" with Schulwitz's distribution scheme.

Finally, Collazos' large supply of cocaine is of significance. The Supreme Court has held that quantity is an important factor in determining whether the supplier of a controlled substance was aware of its future unlawful distribution. *Direct Sales Co. v. United States,* 319 U.S. 703, 705, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943). Indeed, in *Smith,* 832 F.2d at 1170, we found that "no one" supplying multiple kilograms of cocaine "could reasonably believe that it would be used for some purpose other than redistribution." In the present case, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Collazos aided and abetted the crime of possession with intent to distribute.

B. *Counterfeiting Conspiracies–CR–00– 058 and CR–00–054*

In cases CR–00–058 and CR–00–054, Collazos was charged with conspiracy to receive and pass counterfeit currency in violation of 18 U.S.C. §§ 371, 472, and 473.

To sustain a conviction under 18 U.S.C. § 472, the evidence must show that the defendant (1) passed an altered or counterfeit bill; (2) knew it was altered or counterfeit, and (3) passed it with an intent to deceive. *United States v. DeFilippis,* 637 F.2d 1370, 1373 (9th Cir.1981). To sustain a conviction under 18 U.S.C. §§ 472 and 473, a defendant need not personally circulate the counterfeit currency; the offense is complete if a defendant gives the bills to an accomplice with the intent that they be passed as genuine by the accomplice. *United States v. Benefield,* 443 F.2d 61, 62 (9th Cir.1971).

 There was sufficient evidence for the jury to find beyond a reasonable doubt that Collazos was part of the conspiracy to receive and pass counterfeit currency. The evidence shows that Collazos gave counterfeit currency to co-conspirators with the intent that it later be circulated as genuine currency. In addition, the government presented evidence of the co-conspirators' possession of counterfeit currency and their successful attempts to pass it as genuine currency. In light of the evidence presented at trial, a rational trier of fact could conclude beyond a reasonable doubt that Collazos conspired to receive and pass counterfeit currency.

Collazos' argument he is entitled to re-sentencing because there was insufficient evidence to support the jury verdict that the amount of cocaine involved in the conspiracy exceeded five kilograms is without merit. As stated above, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Collazos was involved in a conspiracy to import five kilograms or more of cocaine. Therefore, Collazos is not entitled to re-sentencing.

 We find that the two counterfeiting counts under CR 00–054 and CR–00–058 were not multiplicitous. The question of whether an indictment is multiplicitous is reviewed *de novo*. *United States v. McKittrick*, 142 F.3d 1170, 1176 (9th Cir. 1998). The test for multiplicity, charging a single offense in more than one count, is whether each count "requires proof of a fact which the other does not." *United States v. Kennedy*, 726 F.2d 546, 547–48 (9th Cir.1984).

In cases where multiple conspiracies are charged, either consecutively or simultaneously, under the same conspiracy statute, we have declined to apply the *Kennedy* analysis. *United States v. Montgomery*, 150 F.3d 983, 990 (9th Cir. 1998). The *Montgomery* Court applied the "factor analysis" test:

> [T]o determine whether two conspiracy counts charge the same offense and so place the defendant in double jeopardy, we consider five factors: (1) the differences in the periods of time covered by the alleged conspiracies; (2) the places where the conspiracies were alleged to occur; (3) the persons charged as coconspirators; (4) the overt acts alleged to have been committed; and (5) the statutes alleged to have been violated.

*Id.* at 990 "citing *United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir.1997)."

The evidence at trial supports the existence of two separate conspiracies. In reviewing the evidence under the "factors analysis" test, it is clear Collazos entered into two separate deals with two distinct groups.

The indictment in CR–00–054–RHW charged Collazos with Conspiracy to Receive and Pass Counterfeit Currency, from on or about May 9, 1999, through June 7, 1999, involving Todd Anthony Shipman and Jeremy Allen Standow. In May 1999, Standow and his wife traveled to Columbia to obtain illegal drugs or currency. Standow met with Collazos to discuss counterfeit currency. Standow returned from Columbia with scuba gear containing cocaine to deliver to Shipman. In June 1999, at the request of Standow, Shipman traveled to Columbia to exchange $15,000 of genuine U.S. currency for $107,000 of counterfeit $100 reserve notes with Collazos. Shipman returned to Spokane and divided the counterfeit currency between himself and Standow. Standow and Shipman obtained the counterfeit currency from Collazos without the knowledge or assistance of the members of the second conspiracy charged under CR–00–058.

The CR–00–058–RHW conspiracy occurred between January 15, 1999, and

June 7, 1999, involving Joseph Hutchinson and Jason Schulwitz. Schulwitz recruited Douglas Lee and Nakia Burland to travel to Columbia to pick up counterfeit currency from Collazos. Schulwitz, Burland, and three others passed the counterfeit currency at several stores in the Seattle/Bellevue, Washington area.

The time period of both conspiracies overlaps. However, the 00–058 conspiracy began in January of 1999 and continued until approximately June of 2000. The 00–054 conspiracy occurred during May through June 1999.

While both conspiracies involved individuals traveling to Columbia to pick up the counterfeit currency from Collazos, the overt acts involved were distinct. In the 00–054 conspiracy, the individuals exchanged genuine currency with Collazos for the counterfeit currency. In contrast, the other individuals traveled to Columbia to pick up the counterfeit currency. The counterfeit currency was distributed and used in different locations. In 00–058, the counterfeit currency was passed in several stores in the Seattle/Bellevue, Washington area. In the CR–00–054 conspiracy, two individuals split the money, which was passed in Spokane, Washington, and in Las Vegas, Nevada.

In the CR–00–054 conspiracy, Joseph Hutchinson, Nakia Shane Burland, Douglas Charles Lee, Jason Richard Schulwitz, Raymond Frasu, Ryan Bishop, Jason Hoy, Julie Burk, and Rebecca Vail are named with Collazos as members of a conspiracy to Receive and Pass Counterfeit Currency. In the CR–00–058 conspiracy, Todd Anthony Shipman, Jeremy Allen Standow, and the Collazos are named as members of the conspiracy to Receive and Pass Counterfeit Currency.

When both conspiracies involve the same statutes, 18 U.S.C. §§ 472 and 473, the court must consider whether "the goals of the two conspiracies were similar." *Stoddard*, 111 F.3d at 1456. Although the two conspiracies may have the same goal-to buy counterfeit currency and pass it with the intent to defraud-different individuals were involved, and different overt acts arose out of each conspiracy.

Based upon the evidence applied under the "factor analysis" test, we find the counts in CR–00–054 and CR 00–058 are separate conspiracies. We affirm the district court's denial of Collazos' Motion to Force Election.

Collazos' argument that 21 U.S.C. §§ 841(b), 952, and 960 are unconstitutional is foreclosed by our recent decision in *United States v. Buckland*, 289 F.3d 558 (9th Cir.2002) (en banc). In addition, we upheld the constitutionality of 21 U.S.C. § 952 on similar grounds in *United States v. Varela–Rivera*, 279 F.3d 1174, 1175 n. 1 (9th Cir.2002) (holding challenge to constitutionality of § 952 is precluded based on *Buckland* decision). *See also United States v. Mendoza–Paz*, 286 F.3d 1104, 1109–10 (9th Cir.2002) (finding § 960 constitutional under the rationale of *Buckland*).

■ Collazos' arguments that the district court erred in imposing sentence, in applying an adjustment pursuant to U.S.S.G. § 3B1.1(c) for his role as a "manager or supervisor" and in calculating his criminal history score are precluded by the district court's imposition of the mandatory minimum sentence of twenty years, pursuant to U.S.S.G. § 5G1.1(c), which exceeded the district court's Guideline calculations. The district court found an adjusted offense level of thirty-four and criminal history category of III based upon six criminal history points. This resulted in a guideline range of 188 to 235 months. Under U.S.S.G. § 5G1.1(b), the statutory minimum sentence shall be the

guideline sentence if it is greater than the maximum of the applicable guideline range. Therefore, the district court imposed a sentence of 240 months, the mandatory minimum, pursuant to 21 U.S.C. § 960(b) and U.S.S.G. § 5G1.1(b).[1] Therefore, even if the district court erred in applying the § 3B1.1(c) adjustment, and in calculating Collazos' criminal history category, any error would be harmless because it would not affect the minimum mandatory 240 month sentence imposed.

AFFIRMED.

---

1. Collazos qualified for the twenty year mandatory minimum sentence based upon his present conviction involving over five kilograms of cocaine and his prior felony drug conviction. 21 U.S.C. § 960(b)(1).