**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

CASSANDRA B. NICKERSON,
            *Defendant-Appellant.*

No. 12-10534

D.C. No.
3:08-cr-00192-RS-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted
September 12, 2013—San Francisco, California

Filed October 1, 2013

Before: J. Clifford Wallace and Marsha S. Berzon,
Circuit Judges, and Jack Zouhary, District Judge.[*]

Opinion by Judge Berzon

---

[*] The Honorable Jack Zouhary, District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

---

### Criminal Law

The panel affirmed the district court's affirmation of a conviction before a magistrate judge for three Class B misdemeanors.

The panel held that 18 U.S.C. § 3162(d)(2) does not apply to Class B misdemeanors, and that the charges against the defendant were therefore properly allowed to proceed despite the failure to adhere to the time limit set forth in that paragraph of the Speedy Trial Act.

The panel rejected the defendant's contention that the charges should have been dismissed based on outrageous government conduct of videotaping the defendant while she was using the toilet in a holding cell at the police station, where there was no nexus between that conduct and the criminal proceeding either in securing the indictment or in procuring the conviction.

---

### COUNSEL

Melinda Haag, United States Attorney; Barbara J. Valliere, Assistant United States Attorney, Chief, Appellate Division; and Owen P. Martikan (argued), Assistant United States

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Attorney, United States Attorney's Office, Northern District of California, San Francisco, California, for Plaintiff-Appellee.

Paul F. DeMeester (argued) and Treva Stewart, San Francisco, California, for Defendant-Appellant.

## OPINION

BERZON, Circuit Judge:

Appellant Cassandra B. Nickerson appeals from the District Court's affirmation of her conviction before a Magistrate Judge for three Class B misdemeanors: operating a motor vehicle while under the influence of alcohol in violation of 36 C.F.R § 1004.23(a)(1); operating a motor vehicle with a blood alcohol content over 0.08% in violation of 36 C.F.R. § 1004.23(a)(2); and failure to maintain control of a vehicle in violation of 36 C.F.R. § 1004.22(b)(1). We affirm her conviction.

## I. Background

On January 6, 2008, at about 10:20 p.m., United States Park Police Officer April Ramos responded to an incident involving a car hitting a curb in the Presidio of San Francisco. At the scene, Officer Ramos saw Nickerson standing next to a disabled vehicle. After Nickerson failed field sobriety tests and preliminary blood alcohol screening tests, Officer Ramos placed her under arrest and transported her to the police station.

At the police station, Officer Ramos conducted a breath test on Nickerson and then placed her in a holding cell. Unbeknownst to Nickerson, a motion-sensitive surveillance camera captured her time in the holding cell. There was no sign posted to warn individuals in the holding cell that they were being taped, and the camera was not readily visible to the cell's occupants. A real-time monitor was available to all officers on duty, including both male and female officers.

The Park Police had no written standards to guide their exercise of discretion with respect to video surveillance. Other police stations across the country, however, use motion-sensitive video cameras, such as the one in the cell in which Nickerson was held, for several purposes. These include for medical and security concerns, such as if a detainee attempts suicide, if a physical altercation occurs between detainees, or if a detainee becomes progressively more intoxicated or sick in the holding cell and needs medical attention. The cameras also serve to deter abusive police conduct because, if police officers are aware that the cells are being monitored, they are less likely to commit physically abusive acts towards detainees.

The holding cell, which was about six feet by three feet in size, contained a toilet that was clearly visible through a glass window in the cell's door. While Nickerson was in the holding cell, she used the toilet. This use was recorded by the motion-sensitive video camera. On the video footage, Nickerson could be seen looking toward the glass window while she was using the toilet. She said she was apprehensive that someone might pass by in the hallway and see her through the glass window.

   Nickerson was cited, released, and driven home by an officer at about 12:30 a.m., about two hours after Officer Ramos originally made contact with her.

   On March 25, 2008, the United States charged Nickerson by information with operating a motor vehicle while under the influence of alcohol in violation of 36 C.F.R. § 1004.23(a)(1), operating a motor vehicle with a blood alcohol content over 0.08% in violation of 36 C.F.R. § 1004.23(a)(2), and failure to maintain control of a vehicle in violation of 36 C.F.R. § 1004.22(b)(1).

   Nickerson and her attorney made arrangements to review the video surveillance as part of the discovery process. They expected to see footage of her breath test at the police station. They said they were surprised and outraged to see that the videotape showed Nickerson using the toilet in the holding cell.

   Thereafter, Nickerson filed a motion to dismiss all charges against her on the basis that the videotaping "shocks the conscience" and warranted dismissal under *Rochin v. California*, 342 U.S. 165 (1952). The Magistrate Judge granted the motion and dismissed the case. Although the Magistrate Judge acknowledged there was no evidentiary or investigative value to the videotaping, he concluded that, because the government had not articulated any justification for the recording, the violation of privacy shocked the conscience and dismissal of the criminal charges was warranted.

   The government appealed the dismissal to the District Court. On appeal, the government submitted a supporting affidavit from Officer Ramos, in which she explained, among

other things, why video surveillance is conducted in holding cells.   On June 24, 2009, the District Court granted the appeal, finding no nexus between the videotaping and prosecution of Nickerson, and reinstated the charges.

No further proceedings took place until November 23, 2009.   Thereafter, Nickerson again moved to dismiss the charges.  She argued, among other things, that dismissal was required under certain provisions of the Speedy Trial Act, specifically 18 U.S.C. §§ 3161(d)(2) and 3162, based on the failure to commence trial within seventy days of the date on which the charges were reinstated.   All three crimes with which Nickerson was charged and convicted are Class B misdemeanors.  Under federal law, unless the section defining the offense specifically classifies it otherwise, a crime is "a class B misdemeanor" if the maximum sentence associated with it is "six months or less but more than thirty days." 18 U.S.C. § 3559 (a)(7).   Each of the charges against Nickerson carried punishment of "a fine as provided by law, or by imprisonment not exceeding 6 months, or both," 36 C.F.R. § 1001.3, and were not classified as other than a Class B misdemeanor in the sections in which they were defined, 36 C.F.R §§ 1004.22, 1004.23.   The Magistrate Judge denied the speedy trial motion, holding that the Speedy Trial Act does not apply to Class B misdemeanors.

Following a two-day bench trial, Nickerson was convicted of all three charges.  The Magistrate Judge sentenced her to three years' probation, a $30 special assessment, and either a $1,000 fine or 125 hours of community service.

Nickerson timely appealed to the District Court.  In her appeal, she challenged the denial of her speedy trial motion, the sufficiency of the evidence against her, and denial of her

motion to dismiss under *Rochin*. The District Court denied her motion and affirmed her conviction, holding that the Speedy Trial Act did not apply to the charges against Nickerson and that the evidence was sufficient to support the charges. Nickerson timely appealed.

## II. Discussion

### A. Dismissal under the Speedy Trial Act

Nickerson argues that the charges against her should have been dismissed pursuant to 18 U.S.C. §§ 3161(d)(2) and 3162 of the Speedy Trial Act. The District Court's ruling against Nickerson on this issue—that the Speedy Trial Act does not apply to Class B misdemeanors—is grounded in an interpretation of the Speedy Trial Act and so is reviewed *de novo*. *See United States v. Medina*, 524 F.3d 974, 982 (9th Cir. 2008).

Title 18 U.S.C. § 3161(d)(2) provides in full,

> If the defendant is to be tried upon an indictment or information dismissed by a trial court and reinstated following an appeal, the trial shall commence within seventy days from the date the action occasioning the trial becomes final, except that the court retrying the case may extend the period for trial not to exceed one hundred and eighty days from the date the action occasioning the trial becomes final if the unavailability of witnesses or other factors resulting from the passage of time shall make trial within seventy days impractical. The periods of delay enumerated

> in section 3161(h) are excluded in computing the time limitations specified in this section. The sanctions of section 3162 apply to this subsection.

Failure to bring the defendant to trial within these time limits results in dismissal of the indictment. *See* 18 U.S.C. § 3162(a).**[1]**

Nickerson is correct that § 3161(d)(2) does not itself use the word "offense," which the Act defines to exclude Class B misdemeanors. *See* 18 U.S.C. § 3172(2) ("the term 'offense' means any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress (other than a Class B or C misdemeanor or an infraction, or an offense triable by court-martial, military commission, provost court, or other military tribunal)"). When read in the context of the statute as a whole, however, § 3161(d)(2) clearly does apply only to "offenses" and so not to Class B misdemeanors.

---

**[1]** Subsection (a)(1) provides that the charges brought in a criminal complaint "shall be dismissed or otherwise dropped" if "no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h)." 18 U.S.C. § 3162(a)(1). Subsection (a)(2) provides for dismissal upon the defendant's motion if the "defendant is not brought to trial within the time limit required by section 3161(c) as extended by § 3161(h)." 18 U.S.C. § 3162(a)(2). The last sentence of § 3161(d)(2) specifically makes the sanctions set forth in § 3162, including the dismissal sanction, applicable to violations of the time requirements of § 3161(d)(2) as well. *See also* S. Rep. No. 96-212, at 33 (stating, at the time that § 3162(d)(2) was added, the amendment specified that the "dismissal sanction [is] applicable").

Paragraph (c)(1) creates a time limit by which a trial must commence after a defendant initially is charged with an "offense." The provisions that follow subsection (c) create similar time limits where the initial indictment or information is dismissed and then new charges are filed, or the initial indictment or information is reinstated on appeal, or a retrial is required after a successful appeal or collateral attack. *See* 18 U.S.C. § 3161(d),(e). Read together, these provisions simply carry the original requirements for timely prosecution through the subset of situations in which an intervening appeal or dismissal has somehow "reset the clock." The provisions in (d), then, do not expand beyond "offenses" the category of charges to which the time requirements apply. That this is the proper reading of the Act is further supported by the fact that, although paragraph (d)(2) does not use the word "offense," the provisions referenced in the paragraph do apply to "offenses" only. *See, e.g.*, 18 U.S.C. §§ 3161(h)(8), 3162(a).

As the government points out, Nickerson's proffered interpretation also would lead to anomalous results. Class B misdemeanors can be charged using an indictment or information, or can instead be charged via a citation or violation notice. Fed. R. Crim. P. 58(b)(1). On Nickerson's interpretation, if a Class B misdemeanor is charged in an indictment or information, dismissed, and then reinstated on appeal, the subsequent trial would be subject to the time constraints of § 3161(d)(2); if the same Class B misdemeanor instead were charged through a citation or violation notice, dismissed, and then reinstated on appeal, the subsequent trial would *not* be subject to these time limitations. No parallel inconsistency exists for felonies and Class A misdemeanors, which, unlike a Class B or C misdemeanor, cannot be charged through a citation or violation notice. *See* Fed. R. Crim. P.

7(a),(b), 58(b)(1). No reason or explanation appears for treating these procedural subclasses of Class B misdemeanors differently for speedy trial purposes.

Our conclusion that § 3161(d)(2), in particular, does not apply to Class B misdemeanors is consistent with the prior statements by this Court that the Speedy Trial Act as a whole does not apply to Class B misdemeanors. *See United States v. Boyd*, 214 F.3d 1052, 1057 (9th Cir. 2000) ("Improper entrance onto a military base is a Class B misdemeanor, to which the Speedy Trial Act does not apply."); *United States v. Talbot*, 51 F.3d 183, 185 (9th Cir. 1995) (similar); *United States v. Baker*, 641 F.2d 1311, 1319 (9th Cir. 1981) (similar); *see also United States v. Sued-Jimenez*, 275 F.3d 1, 8 (1st Cir. 2001) (similar); *United States v. Sharpton*, 252 F.3d 536, 542 n.7 (1st Cir. 2001) (similar). Our interpretation also comports with the legislative history of the Speedy Trial Act.

The Speedy Trial Act was enacted in 1974. Section 3161(d)(2) was added by The Speedy Trial Act Amendments of 1979. Section 3172(2), which contains the definition of "offense," has remained substantively the same since it was originally enacted, although it originally referred to Class B and C misdemeanors and infractions using the term "petty offense."[2] The Report of the Senate Judiciary

---

[2] Section 3172 originally excluded from the meaning of offense "a petty offense as defined in section 1(3) of this title." It was amended in 1984 to exclude instead a "Class B or C misdemeanor or an infraction." Pub.L. 98-473, Title II, § 223(I), 98 Stat. 2029 (1984).

At the time that the Speedy Trial Act was enacted, "petty offense" was defined as, "Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500."

Committee on the original Act recognized, "The term 'offense' is defined in such a manner as to exclude defendants charged with petty offenses from the speedy trial provisions." S. Rep. No. 93-1021, at 49 (1974).[3] There is no suggestion in the legislative history that Congress intended *some* provisions of the Act to apply to petty offenses or Class B misdemeanors.

As 18 U.S.C. § 3161(d)(2) does not apply to Class B misdemeanors, the charges against Nickerson were properly allowed to proceed despite the failure to adhere to the time limit set forth in that paragraph.

## B. Dismissal based on egregious government misconduct

Nickerson contends that the criminal charges against her should have been dismissed based on outrageous government conduct of videotaping her while she was using the toilet in a holding cell at the police station. "A claim that the indictment should be dismissed because the government's conduct was so outrageous as to violate due process is

---

18 U.S.C. § 1(3) (1970). The term now encompasses "a Class B misdemeanor, a Class C misdemeanor or an infraction . . ." 18 U.S.C. § 19.

[3] Although § 3161(d)(2) was not added until 1979, § 3161(e) did appear in the original Act. That provision, after which paragraph (d)(2) was modeled, also does not specifically use the word "offense." *See The Speedy Trial Act Amendments of 1979: Hearings Before the Senate Comm. on the Judiciary on S. 961 and S. 1028*, 96th Cong., 1st Sess. 55 (1979) (statement of Philip B. Heymann, Asst. Att'y Gen. of the United States) (recognizing that the proposed § 3161(d)(2) "is equivalent to that currently provided in section 3161(e) for the analogous case of retrial necessitated by appellate proceedings . . ."); S. Rep. No. 96-212, at 32–33 (similar); H. Rep. No. 96-390, at 11 (1979) (similar).

reviewed *de novo*." *United States v. Holler*, 411 F.3d 1061, 1065 (9th Cir. 2005) (citing *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003)).

The District Court properly held that the charges should not be dismissed based on the government conduct here. The invocation of outrageous government conduct is "'not a defense, but rather a claim that government conduct *in securing an indictment* was so shocking to due process values that the indictment must be dismissed.'" *Id.* (quoting *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995)) (emphasis added); *see United States v. Williams*, 547 F.3d 1187, 1199 (9th Cir. 2008) (same); *see also United States v. Jayyousi*, 657 F.3d 1085, 1111–12 (11th Cir. 2011) (noting that, although the Eleventh Circuit has "never acknowledged the existence of the outrageous government conduct doctrine, . . . the actionable government misconduct must relate to the defendant's underlying or charged criminal acts," and holding that dismissal of an indictment was not warranted based on allegations of pre-indictment mistreatment). Here, there was no nexus between that conduct and the criminal proceeding at issue, either in securing the indictment or in procuring the conviction.

Although Nickerson argues for the first time in her reply brief that the challenged conduct in fact was related to the prosecution or investigation of the charges against her, Nickerson waived this argument by failing to present it to the District Court, and failing to raise it in her opening brief before this Court. Further, the evidence in the record and the findings of the trial court support the conclusion that the

government was not attempting to collect evidence through the videotaping and did not do so.

**AFFIRMED.**